**TBC CORPORATION, Appellant,**

v.

**HOLSA, INC., Appellee.**

No. 96–1140.

United States Court of Appeals, Federal Circuit.

Oct. 9, 1997.

Marsha G. Gentner, Jacobson, Price, Holman & Stern, PLLC, Washington, DC, argued for appellant. With her on the brief was Leesa N. Weiss.

William R. Golden, Jr., Kelley Drye & Warren, New York City, argued for appellee.

Before RICH, NEWMAN, and RADER, Circuit Judges.

Opinion for the court filed by Circuit Judge RICH. Circuit Judge RADER dissents from the judgment.

RICH, Circuit Judge.

TBC Corporation (TBC) appeals the decision of the Patent and Trademark Office Trademark Trial and Appeal Board (Board) of 29 September 1995 dismissing TBC's opposition to the registration by Holsa, Inc. (Holsa) of the wordmark GRAND SLAM for tires for motor vehicles. Holsa filed Applica-

tion No. 74/051,660 on 23 April 1990 asserting a bona fide intention to use the mark in commerce. It is undisputed that TBC owns the following trademarks for identical goods, automobile tires: GRAND AM, GRAND SPIRIT, GRAND SPORT, and GRAND PRIX, on all of which it relies to support its opposition. We find it necessary to consider only the GRAND AM mark, although all four of the marks have been in use on tires since long before the filing of Holsa's intent to use application to register GRAND SLAM for tires. For the reasons hereinafter stated, we reverse the Board's dismissal of the opposition.

### BACKGROUND

The Board opinion sets forth the significant facts in this opposition, which we summarize as follows. The record shows that TBC markets and distributes automotive products, primarily passenger car replacement or "aftermarket" tires. It is the fourth largest distributor thereof in the United States. It sells to both other distributors and retailers through approximately 20,000 retail outlets. TBC began use of the GRAND AM mark in 1978, which mark appears on the sidewalls of the tires and on labels affixed to the treads.

For the five-year period preceding this opposition, TBC's sales of tires and other automotive products totaled in excess of $682 million, its sales of tires under the GRAND AM mark exceeding $350 million. For the same period, TBC spent about $3 million in the preparation of advertising and promotion materials for all four of its tire marks, which material it supplies to its vendors for use locally in newspapers, TV, and radio. Included in advertising are illuminated outdoor signs, posters, banners, counter cards, mobiles, catalogs, brochures, and the like.

After finding the above facts, the Board then stated these conclusions:

Priority clearly rests with opposer.... Applicant intends to use its mark on goods which are identical or otherwise closely related to those marketed and distributed by opposer.... The ultimate purchasers of these goods constitute a broad range of individuals from very knowledgeable car enthusiasts to persons who have little or no knowledge of tires.

*TBC Corp. v. Holsa, Inc.,* Opposition No. 84,567, slip op. at 10 (TTAB Sept. 29, 1995). It also dismissed applicant's reliance on a substantial number of third-party registrations, saying that "they are not proof that consumers are familiar with such marks so as to be accustomed to the existence of similar marks in the marketplace." *Id.* (citation omitted).

Notwithstanding all of the foregoing, in which we find no flaw, the Board stated its conclusion thus:

Notwithstanding the identity of the goods herein, and opposer's considerable success in the marketplace, we find that there is no likelihood of confusion between applicant's mark GRAND SLAM and opposer's marks GRAND PRIX, GRAND AM, GRAND SPORT and GRAND SPIRIT. We reach this finding because of the nature of the mark GRAND PRIX and the term GRAND and the distinct connotation of applicant's mark GRAND SLAM.

*Id.*

Later in its opinion, the Board explained what it meant by the "distinct connotation" of GRAND SLAM. It cited the Random House dictionary definition of the term showing that it has recognized meanings in bridge, baseball, golf, and tennis and then said, "[i]ts meaning is very different from the connotation of any of opposer's marks. In sum, because of the weakness of the term GRAND and the mark GRAND PRIX and the very unique connotation of applicant's mark GRAND SLAM, confusion is not likely between opposer's pleaded marks and the applicant's mark." *Id.* at 13.

### DISCUSSION

■ We find the Board's reasoning unpersuasive. Nowhere in its opinion does it deal specifically with the obvious similarities between the *closest of opposer's marks,* GRAND AM, and applicant's mark GRAND SLAM, or their close similarity in sound, or give any recognition to the fact that with respect to automobile tires GRAND SLAM is wholly arbitrary, *i.e.,* it has no meaning at all. It is neither descriptive nor suggestive of the goods or any of their properties and its dictionary definitions in the fields of games and

sports are of no help in solving the problem of the likelihood of confusion if the two marks are used on automobile tires.

In speaking of "likelihood of confusion," we do not mean to exclude the other statutory bases of oppositions named in section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d) (1994), where the applicable clause says "to cause confusion, or to cause mistake, or to deceive." Putting this clause into the full context of section 1052, the law applicable to the facts here is this:

No trademark . . . shall be refused registration . . . on account of its nature unless it -

. . . .

(d) Consists of or comprises . . . a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive. . . .

Illustrated below are some of the ways the opposer, TBC, has been using and continues to use its mark GRAND AM.

Particular attention is called to the use of the GRAND AM mark in white outlined large letters on the tire sidewall as featured on the dealer advertisement on the left and also shown at the right which would bring the mark to the attention of the general motoring public and even to juveniles attracted to cars before the driving age, who become future tire buyers.

We believe that it is at least likely that concurrent use of GRAND AM and GRAND SLAM on tires would cause mistake because of their similarity in various ways. They are both two-word marks beginning with the identical word GRAND. It does not matter that GRAND is "laudatory," a characteristic

the Board thought contributed to its "weakness" as a trademark. It is a major contributor to overall similarity. In view of the Board's finding that tires are sold to all manner of people, which seems obvious, we also think that the dictionary definitions of "grand slam" are entitled to little or no weight. Many tire buyers will not be familiar with those definitions so those uses in the fields of bridge and sports will have no effect on their minds in seeing the term on tires. And particularly we feel that in this age of business over the telephone and advertising on TV and radio the close similarity in sound between GRAND SLAM and GRAND AM would be likely to result in mistake if not confusion.

Finally, as witness the fact that applicant has filed an intent to use application, the well established rule that doubts are to be resolved against a newcomer and in favor of an established longtime user applies here. *San Fernando Electric Mfg. Co. v. JFD Electronics Components Corp.*, 565 F.2d 683, 196 USPQ 1 (CCPA 1977) (dismissal of opposition to registration of MICROCERAM by owner of MONOCERAM applied to identical goods reversed). As stated in that case, in addition to the "newcomer rule" and equally applicable here, is the principle that notwithstanding the fact that each syllable of each mark generates its own impact, the only impact to be considered is that of the marks as a whole; they are not to be dissected in considering likelihood of confusion or mistake. *Id.*, 565 F.2d at 685, 196 USPQ at 3.

*CONCLUSION*

The Board's dismissal of the opposition is reversed.

*REVERSED*

RADER, Circuit Judge, dissents.