Paper No. 45
BAC

THIS DISPOSITION IS
CITABLE AS PRECEDENT OF THE TTAB     9/14/00

UNITED STATES PATENT AND TRADEMARK OFFICE
‗‗‗‗‗

Trademark Trial and Appeal Board
‗‗‗‗‗

Recot, Inc.

v.

M. C. Becton
‗‗‗‗‗

Opposition No. 96,518
‗‗‗‗‗

On Remand From
 The United States Court of Appeals For The Federal
Circuit
‗‗‗‗‗

Laurence R. Hefter of Finnegan, Henderson, Farabow,
Garrett & Dunner, L.L.P. for Recot, Inc.

Mark H. Elovitz of Mark H. Elovitz, P.C. for M. C.
Becton.
‗‗‗‗‗

Before Sams, Hairston and Chapman, Administrative
Trademark Judges.

Opinion by Chapman, Administrative Trademark Judge:


     In an order dated June 7, 2000, the United States

Court of Appeals for the Federal Circuit vacated the

Board's December 4, 1998 decision dismissing the

opposition.  In particular, the Court stated that "the

Board improperly discounted the fame of the FRITO-LAY marks, did not consider all of the relevant evidence when determining if the products were related, and improperly dissected the marks." The case was remanded to the Board for a re-determination of the question of likelihood of confusion.

As instructed by the Court, we now reconsider the evidence of record in light of the relevant du Pont[1] factors, giving each evidentiary element its due weight.


***The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.***

The marks FRITO LAY and FIDO LAY, when viewed in their entireties, have a number of similarities in appearance. Both marks consist of two words, the second of which is "LAY." The first word of each mark consists of a word beginning with the letter "F" and ending with the letter "O." The two marks also have similarities in sound. The first words of the two marks have the same initial and concluding sounds. And both marks consist of three syllables, with the same cadence when spoken.

---

[1] In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973).

On the other hand, the connotations of the parties' respective marks are dissimilar. FRITO is Spanish for "fried," whereas FIDO is a well-known name for a dog. There is no evidence of record as to the origin of LAY (or LAY'S) in opposer's marks, while applicant submitted evidence that in relation to its mark LAY refers to a dog command.

Having considered all the evidence of record on this point, we find that the similarities in appearance and sound between FRITO LAY and FIDO LAY outweigh the dissimilarity in connotation, such that the overall commercial impression conveyed by the two marks is similar.

*The similarity or dissimilarity and nature of the goods.*

Applicant's goods are "natural agricultural products, namely, edible dog treats" (e.g., smoked bones, pigs ears, turkey feet, cow hooves), and opposer's goods are various human snack foods (e.g., corn chips, potato chips, pretzels, cakes, candy). While opposer's witness Paulette Kish testified that she was aware of at least two companies that make both human food and pet food (i.e., Ralston Purina, Quaker), there is no evidence of

record that such companies sell both products under the same or similar product marks.

The record shows that, while both parties' products are sold in supermarkets, there is no evidence that opposer's FRITO LAY snack foods are sold in close proximity to applicant's FIDO LAY dog treats.

Opposer's witness Paulette Kish also testified regarding opposer's plans to co-merchandise its products with a movie company (Walt Disney, Inc.) in connection with the release of the movie "101 Dalmatians." At the time of her deposition (August 8, 1996), the movie had not been released. Thus, the co-merchandising had not yet occurred, and there is no evidence as to the nature and extent of the promotional efforts.

Having considered all the evidence concerning the similarity or dissimilarity of the parties' goods, we find that there is not a close relationship between the products. While both products are, generally speaking, food items, they are different in essential character: human snack foods vs. animal parts marketed as dog treats. The strongest evidence of a relationship between the goods is that there are at least two companies that make both dog food and human food. But there is no convincing evidence that dog food and human food products

are marketed together.  The mere fact that opposer arranged for a marketing tie-in between its snack foods and a popular animated feature film about dogs is not persuasive evidence that the public would be likely to connect the source of FRITO LAY products with the source of applicant's FIDO LAY dog treats.

***The conditions under which and buyers to whom sales are made, i. e., "impulse" vs. careful, sophisticated purchasing.***

As we noted in our original decision in this case, the evidence shows that both parties' goods are inexpensive and, therefore, are subject to purchase on impulse.  We note also that, in view of the Court's specific emphasis in its remand order that, when products are inexpensive and subject to purchase on impulse, as in this case, the likelihood of confusion increases, we accord this evidentiary element more weight than we did before in the balance of likelihood of confusion evidence.

***The fame of the prior mark.***

In our original decision we found that opposer's FRITO LAY mark has become famous as the result of its use in connection with snack foods.  There is ample evidence of record to support that finding, and applicant did not argue otherwise.  And we are particularly mindful of the Court's instruction, in its decision remanding this case to us, that "the fame of the mark must always be accorded full weight when determining the likelihood of confusion," and that the reasoning behind the broad scope of protection afforded to famous marks "applies with equal force when evaluating the likelihood of confusion between marks that are used with goods that are not closely related." (emphasis added).

Having considered all the evidence of record, we conclude that confusion is likely in the contemporaneous use of FRITO LAY and FIDO LAY for the parties' respective goods.
We reach that conclusion by giving heaviest weight to the following evidentiary elements:  (1) the fame of the FRITO LAY mark, (2) the similarity in overall structure, appearance and sound of the two marks FRITO LAY and FIDO LAY, and (3) the "impulse-purchase" nature of the parties' goods.  The principal evidentiary element favoring applicant, the dissimilarity of the parties'

goods, is insufficient to outweigh the evidentiary elements favoring opposer.  Or, to put the matter in other words, the parties' goods are not so fundamentally disparate in nature as to make this evidentiary element the determinative one on the issue of likelihood of confusion.

Finally, we confess that we have at least some doubt about our conclusion that confusion is likely.  But, of course, where there is any doubt on the question of likelihood of confusion, it must be resolved against the newcomer as the newcomer has the opportunity of avoiding confusion, and is obligated to do so.  See TBC Corp. v. Holsa Inc., 126 F.3d 1470, 44 USPQ2d 1315 (Fed. Cir. 1997); and In re Hyper Shoppes (Ohio) Inc., 837 F.2d 840, 6 USPQ2d 1025 (Fed. Cir. 1988).

Decision:  The opposition is sustained, and registration to applicant is refused.

J. D. Sams

P. T. Hairston

B. A. Chapman
Administrative Trademark Judges,
Trademark Trial and Appeal Board