THIS OPINION IS CITABLE AS
PRECEDENT OF THE TTAB

Mailed:  January 12, 2006
PTH

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

Ava Enterprises, Inc.
v.
Audio Boss USA, Inc.

_____

Opposition No. 91125266
to application Serial No. 76107708
filed on August 11, 2000

_____

Seth E. Freilich of Pillsbury Winthrop, LLP for Ava
Enterprises, Inc.

Albert Bordas of Sanchelima & Associates, P.A. for Audio
Boss, Inc.

_____

Before Hairston, Walsh and Zervas, Administrative Trademark
Judges.

Opinion by Hairston, Administrative Trademark Judge:

Ava Enterprises, Inc. (a California corporation) has

opposed the application of Audio Boss USA, Inc. (A Florida

corporation) to register the mark shown below,



for "car power amplifiers, car speakers, car stereos, and home theater speakers."[1]  The application includes a statement that "The mark consists of the wording AUDIO BSS USA" and a disclaimer of AUDIO and USA apart from the mark as shown.

As grounds for opposition, opposer has alleged that applicant's mark, when applied to the identified goods, so resembles opposer's previously used and registered mark shown below,



for "automobile audio components; namely AM/FM stereo receivers, cassette tape decks, compact disc players, power amplifiers, equalizers, electronic cross overs and speakers,"[2] as to be likely to cause confusion under Section 2(d) of the Trademark Act.

Applicant, in its answer, denied the salient allegations of the notice of opposition.  Briefs have been filed, but no oral hearing was requested.

---

[1] Application Serial No. 76107708, filed August 11, 2000, based upon an allegation of a bona fide intention to use the mark in commerce in connection with the identified goods.
[2] Registration No. 1,730,794 issued November 10, 1992; renewed. The registration includes a disclaimer of AUDIO SYSTEMS apart from the mark as shown.

THE RECORD

The record consists of the pleadings; the file of the involved application; the testimony depositions (with exhibits) of opposer's president Soheil Rabbani, market researcher Howard Marylander, and applicant's president Bassem Nassar.  Also, opposer submitted a notice of reliance on a status and title copy of opposer's pleaded registration, applicant's responses to opposer's interrogatories and requests for admissions, and portions of the discovery deposition of Bassem Nassar.

THE PARTIES

The record shows that opposer, Ava Enterprises, Inc., commenced business operations in 1989 and has continuously used the mark BOSS AUDIO SYSTEMS and design in connection with automobile audio products since that time.  Opposer distributes automobile audio products in the United States and abroad.  Opposer's products are sold at retailers who deal in automobile audio products and the ultimate customers of opposer's products are primarily males age 16-24.

Opposer spends over one million dollars annually advertising and promoting its automobile audio products. Opposer advertises its products in the consumer magazine "Car Audio and Electronics" and the trade magazine "Installation News."  Also, opposer advertises by way of car promotions, point-of-purchase material, and distribution of

3

an annual product catalog.  Opposer promotes its products at trade shows and attends many such shows each year.

In terms of opposer's sales, they have increased each year since 1989, and now total over $50 million annually.

Applicant, Audio Boss USA, Inc.,[3] is in the business of importing and exporting car and home audio equipment. According to applicant's president, Mr. Nassar, as of the date of his testimony (June 2004), applicant had been engaged in this business for approximately 15 years.  As to how the mark was selected, Mr. Nassar testified that he began with the phrase "Best Sound System" which he considered too long;" shortened this to "BSS;" and added "AUDIO" and "USA."  He testified that the circular design around the letter "B" in "BSS" is simply an arbitrary design.  Applicant intends to sell its products under the involved mark to wholesalers in the United States and to export the products abroad.

PRIORITY

Priority is not in issue because opposer's pleaded registration for BOSS AUDIO SYSTEMS and design has been made of record.  King Candy Co., Inc. v. Eunice King's Kitchen,

---

[3] Although applicant states in its brief that it has changed its name to Audio BSS USA, Inc., no evidence of a change of name was provided and there is no record of a name change recorded with the Assignment Branch of the USPTO.  Thus, applicant's name will remain Audio Boss USA, Inc.  See TBMP § 502.01 (2d ed. rev. 2004).

Inc., 496 F.2d 1400, 182 USPQ 108 (CCPA 1974). Moreover, the record shows that opposer has used its mark on automobile audio products since prior to the August 11, 2000 filing date of applicant's intent-to-use application.

LIKELIHOOD OF CONFUSION

Our determination of the issue of likelihood of confusion is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in In re E. I. duPont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). See also, In re Majestic Distilling Company, Inc., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods and/or services. See Federated Foods, Inc. v. Fort Howard Paper Co., 544 F.2d 1098, 192 USPQ 24 (CCPA 1976). See also, In re Dixie Restaurants Inc., 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).

The Goods

Turning first to the respective goods of the parties, we note that applicant does not dispute that the car power amplifiers, speakers and stereos identified in its application are legally identical and otherwise closely related to the automobile AM/FM stereo receivers, cassette tape decks, compact disc players, power amplifiers,

equalizers, electronic cross overs and speakers identified in opposer's registration.  Such goods would be sold in the same channels of trade, e.g., mass merchandisers, electronic stores, and stores which specialize in the sales and installation of automobile sound systems, to the same consumers.  Further, these types of goods would be purchased by ordinary consumers who would not necessarily be expected to exercise a high degree of care in purchasing these products.  Although applicant contends that the purchasers of automobile audio equipment are sophisticated, applicant offered no evidence from which we may conclude that purchasers of such equipment are necessarily sophisticated.

The Marks

Turning next to a consideration of the marks, we begin our analysis of whether confusion is likely by keeping in mind two propositions set forth by our primary reviewing court, the Court of Appeals for the Federal Circuit.  First, "when marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion declines."  Century 21 Real Estate Corp. v. Century Life of America, 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992).  Second, in articulating reasons for reaching a conclusion on the issue of likelihood of confusion, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a

particular feature of a mark provided the ultimate conclusion rests on consideration of the marks in their entireties." In re National Data Corp., 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985).

Furthermore, the test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their commercial impression that confusion as to the source of the goods and/or services offered under the respective marks is likely to result. The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. See Spoons Restaurants Inc. v. Morrison Inc., 23 USOQ2d 1735 (TTAB 1991), affirmed in unpublished opinion, Appeal No. 92-1086 (Fed. Cir. June 5, 1992).

As to opposer's mark, opposer has disclaimed exclusive rights to use the words AUDIO SYSTEMS. These words are clearly descriptive/generic of opposer's automobile audio components. Thus, it is the word BOSS that is the dominant portion of opposer's mark. Moreover, the word BOSS in opposer's mark is much more prominently displayed, thereby reinforcing the dominance of this portion of the mark.

As to applicant's mark, the letter designation BSS is the dominant portion of the mark. Applicant has disclaimed exclusive rights to use the terms AUDIO and USA. The word

AUDIO is clearly descriptive/generic for applicant's car power amplifiers, car speakers, car stereos, and home theater speakers, and USA is clearly a geographically descriptive term.

In terms of sound, we find that opposer's mark BOSS AUDIO SYSTEMS and design and applicant's mark AUDIO BSS USA and design are somewhat different particularly because the dominant portions BOSS and BSS do not sound alike. Also, in terms of connotation, the respective marks are dissimilar in that opposer's mark BOSS AUDIO SYSTEMS and design suggests automobile audio equipment that is "top-of-the line,"[4] whereas applicant's mark AUDIO BSS USA and design has no particular meaning. Thus, in terms of sound and connotation/meaning, we find that the marks are more dissimilar than similar.

However, in terms of appearance and commercial impression, we find that the marks are highly similar. Both marks include the word AUDIO and the dominant portions of the respective marks, BOSS and BSS, differ by only a single letter. Moreover, BOSS and BSS are depicted in virtually the same distinctive font. In particular, the "B's" looks like the number "3", and the top curve of the "S's" is not shown. Also, although applicant's president testified that

---

[4] In this regard, we judicially notice that The American Heritage Dictionary of the English Language (4th ed. 2000) at 214 defines "boss" as, inter alia, "Slang – First-rate, topnotch."

the circular design encompassing the "B" in BSS is arbitrary, it is not unlike the letter "O." In order for a likelihood of confusion to exist, two marks need not be similar in sound, appearance, connotation, and commercial impression. Rather, similarity in either respect alone may be sufficient to support a finding of likelihood of confusion. Krim-Co Corp. v. Coca-Cola Co., 390 F.2d 728, 156 USPQ 523 (CCPA 1968). We find, therefore, that when the marks are considered in their entireties, they are similar in appearance and commercial impression. The term USA in applicant's mark and SYSTEMS in opposer's mark are not sufficient to distinguish the marks in terms of appearance and commercial impression.

Fame of The Prior Mark

With respect to the duPont factor of the fame of the prior mark in terms of sales, advertising and length of use, opposer contends in its brief that its mark should be considered a strong and famous mark in the field and therefore entitled to a broad scope of protection. While the evidence of record is insufficient to establish that opposer's BOSS AUDIO SYSTEMS and design mark is famous, we nevertheless concur with opposer that its sales and advertising figures, its promotional materials and its many years of continuous use establish that it is a strong mark in the field.

<u>Opposer's Survey</u>

In support of its claim of likelihood of confusion, opposer introduced the results of a survey conducted under the supervision of Howard Marylander, an independent market researcher. The survey was designed "to determine whether there was a likelihood of confusion between the stylized appearance of a federally registered trademark, 'Boss Audio Systems' used on automobile audio components, namely AM/FM stereo receivers cassette tape decks, compact disk players, power amplifiers, equalizers, electronic cross overs, and speakers and a proposed stylized appearance of a mark, 'Audio Boss USA,' for use on car power amplifiers, car speakers, car stereos, and home theater speakers." (Survey Results, p. 3).[5] The survey was conducted in eight shopping malls located in geographically dispersed cities in the United States. A total of 200 respondents, all male and between the ages of 16 and 29 participated in the survey. After some preliminary questions, the respondents were told that they were going to view the names of brands of car and truck audio equipment and electronics. The respondents were told to look at the

---

[5] We note that throughout the survey results and Mr. Marylander's testimony, applicant's mark is characterized as AUDIO BOSS USA, rather than AUDIO BSS USA. Mr. Marylander testified that the "[interviewers] never pronounced the names. So whether the name was called Audio Boss USA or Audio BSS USA was not relevant for the survey. We based the findings entirely on the stylized appearance." (Marylander deposition, p. 37).

brand names as if they were shopping for audio equipment and electronics or looking at an advertisement. The respondents were shown two cards, one at a time. A test group of 100 respondents were shown a card with opposer's mark BOSS AUDIO SYSTEMS and design and it was removed from view. These same respondents were shown a card with applicant's mark AUDIO BSS USA and design and it was removed from view. The order of showing the cards was reversed so that approximately half of the respondents saw the card with opposer's mark first and approximately half saw the card with applicant's mark first. A control group of 100 respondents were shown a card with opposer's mark and it was removed from view. These same respondents were shown a card with the mark KENWOOD[6] and it was removed from view. Again, the order of showing the cards was reversed so that approximately half of the respondents saw the card with opposer's mark first and approximately half saw the card with the mark KENWOOD first. After the two cards had been taken away, the respondents in both the test group and the control group were asked the following question:

> Do you think that the brand name you saw first and
> the brand name you saw second come from the same
> company, different companies, or are you not sure?

---

[6] According to Mr. Marylander, this mark was chosen because KENWOOD is an existing brand in the mobile audio equipment and electronics field.

The respondents who answered "[t]hey come from different companies" or "[d]on't know/not sure" were then asked:

> Which of these statements best describes your opinion about the company that makes the brand of audio equipment and electronics that you saw first and the company that makes the brand of audio equipment and electronics that you saw second?
>
> > -The companies are connected or associated
> > -The companies are not connected or associated
> > -You are not sure

To probe for clarity, all respondents were asked "Why do you feel that way."

A review of the survey results shows that 45% of the respondents who saw opposer's and applicant's marks thought that they come from the same company compared to only 5% in the control group who were exposed to opposer's mark and the KENWOOD mark. Further, a total of 57% of the respondents exposed to opposer's and applicant's marks thought they come from the same company or that the companies that make the brands are connected or associated, compared to only 12% in the control group that were exposed to opposer's mark and the KENWOOD mark. In addition, among those respondents who thought that opposer's and applicant's marks come from the same company or from companies that are connected or associated, the large majority (82%) attributed it to the similarity in appearance of the marks. Specifically, 30% said the "B's/S's are the same", 23% said, "both say Boss/Boss Audio", 11% said the "marks have same logos", 9%

12

said the "designs look similar", and 9% said, "font style is similar". This is in sharp contrast to the reasons given by the small percentage of respondents who thought opposer's mark and the KENWOOD mark come from the same company or from companies that are connected or associated. For example, 25% said, "both marks are for car entertainment/audio," 25% said "everything is associated/connected today," 33% said, "companies have the same products," and 8% said they "had heard the marks are from the same company."

Applicant has raised no objections to the survey procedures, and while we recognize that no survey is perfect, we find that the 57% result here is strongly probative of a likelihood of confusion. See J & J Snack Foods Corp. v. McDonald's Corp., 932 F.2d 1460, 18 USPQ2d 1889 (Fed. Cir. 1991) [A consumer survey in which 30% of the respondents were confused supports a finding of likely confusion]. See also 3 J. T. McCarthy, Trademarks and Unfair Competition §32.54 (4th ed. 205), listing decisions where percentages much lower than 57% supported a finding of likelihood of confusion. Also, in the survey before us, it is particularly telling that the majority of the reasons given for confusion related to the similarity in the appearance of opposer's and applicant's marks. While the

13

survey is not necessary to reach a conclusion that there is a likelihood of confusion, it is strong confirmation of this conclusion.[7]

Applicant's Intent

Finally, opposer argues in its brief that applicant adopted its mark in an attempt to trade off opposer's good will. Opposer maintains that it filed an infringement action in Paraguay against a company named PAC Trading, of which applicant's president Mr. Nassar is an officer. PAC Trading was using the identical mark sought to be registered herein, namely, AUDIO BSS USA and design. Opposer and PAC Trading entered into an agreement whereby PAC Trading agreed to cease use of the mark in Paraguay. As a result of the proceedings in Paraguay, it is opposer's contention that applicant was fully aware of the confusing similarity of the respective marks.

Applicant, on the other hand, argues that it adopted its mark in good faith, and that what transpired in the proceedings in Paraguay is irrelevant to applicant's right to register the involved mark in the United States.

---

[7] As noted, applicant did not contest the probative value of the survey. Nonetheless, we observe that the KENWOOD mark used in the control group is clearly very different from opposer's BOSS AUDIO SYSTEMS and design mark. Perhaps a mark somewhat more similar to opposer's mark could have been used in the control group. However, this had no effect on the 57% result in the test group and the specific reasons given by the respondents in the test group for finding that opposer's and applicant's mark are similar.

While there is no question that Mr. Nassar knew of opposer's mark, mere knowledge thereof does not establish that applicant adopted its mark in bad faith.[8] In saying this, however, applicant's adoption of a mark which includes a unique font essentially identical to that used by opposer certainly raises an eyebrow.

In any event, a newcomer has both the opportunity and the obligation to avoid confusion. Consequently, a party which knowingly adopts a mark similar to one used by another for the same or closely related goods does so at its own peril; all doubt on the issue of likelihood of confusion must be resolved against the newcomer. See TBC Corp. v. Holsa Inc., 126 F.3d 1470, 44 USPQ2d 1315 (Fed. Cir. 1997); and In re Hyper Shoppes (Ohio), Inc., 837 F.2d 463, 6 USPQ2d 1025 (Fed. Cir. 1988.

Thus, when all the relevant duPont factors are considered, including the identity of the goods, trade channels and purchasers, lack of sophistication of the purchasers, and the marks' similarity in appearance and

---

[8] Opposer did not establish by a preponderance of the evidence that applicant's intent involved bad faith. Accompanying Mr. Nassar's deposition is a copy of the agreement between opposer and PAC Trading in Spanish, but no translation has been provided. Thus, we are unable to determine if Mr. Nassar (and by extension applicant) expressly agreed therein that the involved marks are confusingly similar.

commercial impressions, we conclude that confusion is likely.  The results of the survey corroborate that conclusion.

**Decision**:  The opposition is sustained.