**KANGOL LIMITED, Appellant,**

v.

**KANGAROOS U.S.A., INC., Appellee.**

**No. 92–1059.**

United States Court of Appeals,
Federal Circuit.

Aug. 31, 1992.

---

James M. Wetzel, Chicago, Ill., argued for appellant. With him on the brief was Joanne M. Dennison, Chicago, Ill.

Paul M. Denk, St. Louis, Mo., argued for appellee.

Before RICH, NEWMAN, and RADER, Circuit Judges.

RICH, Circuit Judge.

Kangol Limited (Kangol) appeals from the August 21, 1991, decision of the Trademark Trial and Appeal Board (TTAB) sustaining KangaROOS U.S.A., Inc.'s (Kangaroos) Opposition No. 80,228. Kangaroos opposed Kangol's registration of the trademark "KANGOL and Kangaroo design" for "golf shirts having collars," application Serial No. 73/750,766, filed September 8, 1988, on several grounds, among others, that Kangol's use of the mark was likely to cause confusion in view of the trademark "KangaROOS and kangaroo design," Reg. No. 1,463,500, for "clothing, namely, athletic shoes, sweatsuits, and athletic shirts." We affirm.

The TTAB found "applicant's golf shirts having collars to be closely related, if not encompassed within, opposer's identification of 'athletic shirts'" and that consumers are "likely to regard applicant's mark as a variant of opposer's KangaROOS and Kangaroo design mark, with both marks identifying shirts emanating from a single source." Applicant alleged that the TTAB erred in its findings; simply, that golf shirts are not athletic shirts, and that the marks are sufficiently different so as not to cause consumer misperceptions as to source of the goods.

The issue before us is whether applicant's mark is so similar to opposer's registered mark that when seen by purchasers on the same or similar goods it will be likely to cause confusion concerning

source or origin under § 2(d) of the Lanham Act, 15 U.S.C. § 1052(d) (1988).

■ Our predecessor court in *In re E.I. Du Pont De Nemours & Co.*, 476 F.2d 1357, 1360–1361, 177 USPQ 563, 567 (CCPA 1973), set forth several evidentiary factors to consider when addressing the question of likelihood of confusion. The TTAB focused its discussion on three of these factors: similarity of the marks; similarity of the goods; and similarity of the trade channels. Such factors need to be examined in terms of their application in the marketplace where the confusion of purchasers would or would not be likely to occur. *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1569, 218 USPQ 390, 393 (Fed.Cir.1983); *Du Pont*, 476 F.2d at 1360, 177 USPQ at 567.

Although differences exist between applicant's and opposer's marks, the similarities outweigh the dissimilarities. Each mark includes a word beginning with the prefix "Kang" beneath the design of a kangaroo. Opposer's use of the word "KangaROOS" leaves no doubt as to the intended meaning of the mark, with or without the kangaroo design. In contrast, applicant explains that the word "KANGOL" is an acronym for "knitting, angora and wool." ("K" for knit, "ang" from angora, and "-ol" from wool.) However, as the TTAB noted, applicant's use of the word "KANGOL" in connection with the kangaroo design is likely to be perceived as slang or foreign usage for kangaroo. Applicant's own testimony evidences that even before the kangaroo design was added to the mark for its hats, consumers would ask for "kangaroo hats," rather than "Kangol" hats. For this reason, applicant added a kangaroo to its mark (previously just "KANGOL"), further strengthening the association consumers were already making.

■ As this court has noted, a particular feature of a mark may be more obvious or dominant, and therefore, when determining likelihood of confusion, greater weight ought to be given to the force and effect of such a feature. *Giant Food*, 710 F.2d at 1570, 218 USPQ at 395. *See In re Electrolyte Labs, Inc.*, 929 F.2d 645, 646, 16 USPQ2d 1239, 1240 (Fed.Cir.1990); *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed.Cir.1985). Here, the kangaroo design, common to both marks, is likely to be perceived as the dominant feature. In both instances, consumers are likely to "read" what they see, regardless of what the word below the design actually says. What is important is not whether people will necessarily confuse the marks, but whether the marks will be likely to confuse people into believing that the goods they are purchasing emanate from the same source. *Paula Payne Prods. Co. v. Johnson Publishing Co.*, 473 F.2d 901, 902, 177 USPQ 76, 77 (CCPA 1973); *Columbian Steel Tank Co. v. Union Tank & Supply Co.*, 277 F.2d 192, 196, 125 USPQ 406, 409 (CCPA 1960). Though admittedly different in design,[1] the use of the kangaroo by both Kangaroos and Kangol may suggest to the consumer that there is a common source or origin between opposer's and applicant's goods.

■ Applicant suggests that the TTAB employed "creative efforts" in finding that "golf shirts" are within the category of "athletic shirts," and attempts to convince us that golf shirts (i.e., polo shirts with collars), unlike tee shirts and sweat shirts, cannot be considered athletic shirts. We find no merit in this argument. The issue cannot be resolved based on a question of semantics; rather, it is a question of whether a consumer will make the distinction between a shirt intended as a "golf shirt" from one called an "athletic shirt." The likelihood of confusion must be determined from the perspective of the ordinary consumer. *J & J Snack Foods Corp. v. McDonalds' Corp.*, 932 F.2d 1460, 1463–1464, 18 USPQ2d 1889, 1892 (Fed.Cir.1991). "Golf shirts," if not identical to, are without a doubt similar to shirts worn while

1. Opposer's registered mark includes a running kangaroo with a baby kangaroo in its pouch and a shield serving as a background; while applicant's mark simply has a standing kangaroo facing in the opposite direction.

participating in other athletic events,[2] and it is unlikely that the ordinary purchaser will distinguish one from the other.

There is no evidence that opposer's and applicant's goods are currently being sold in the same channels of trade. Yet, in neither the applicant's application nor in the opposer's registration are the trade channels in any way restricted. The issue of likelihood of confusion is resolved by considering the "normal and usual channels of trade and method of distribution." *CBS Inc. v. Morrow*, 708 F.2d 1579, 1581, 218 USPQ 198, 199 (Fed.Cir.1983). *See Canadian Imperial Bank v. Wells Fargo Bank, N.A.*, 811 F.2d 1490, 1 USPQ2d 1813 (Fed. Cir.1987). In this case, regardless of whether or not golf shirts having collars are treated as being specifically different from athletic shirts, the goods are likely to be sold in department stores or specialty shops in close proximity to each other. And as Kangol's president conceded, "it would cause confusion in the marketplace, obviously" were this natural commonality of trade channels to take place.

Applicant argues that the TTAB ought to have considered the fact that there has been no actual confusion in the marketplace. However, the test applied by this court is a practical likelihood of confusion which would damage the opposer. *Witco Chem. Co. v. Whitfield Chem. Co.*, 418 F.2d 1403, 1405, 164 USPQ 43, 44 (CCPA 1969). And, applicant's own concession that a likelihood of confusion exists supports the TTAB's findings. Accordingly, we affirm the TTAB's decision denying Kangol registration of its mark.

AFFIRMED.

---

**2.** We note, for example, no legally significant difference in "golf shirts" in contrast to shirts worn in tennis or bowling.