THIS DISPOSITION IS
NOT CITABLE AS PRECEDENT
OF THE TTAB

Mailed: January 28, 2004

Paper No. 13
BAC

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re L.I.D. Ltd.
_____

Serial No. 76226294
_____

Ezra Sutton of Ezra Sutton, P.A., for L.I.D. Ltd.

Robert Clark, Trademark Examining Attorney, Law Office 108 (David Shallant, Managing Attorney).
_____

Before Simms, Chapman and Drost, Administrative Trademark Judges.

Opinion by Chapman, Administrative Trademark Judge:

On March 6, 2001, L.I.D. Ltd. (a New York corporation) filed an application to register the mark RINGS OF ETERNITY on the Principal Register for "jewelry, namely, rings, bracelets, necklaces, earrings and pendants" in International Class 14.  The application is based on applicant's assertion of a bona fide intention to use the mark in commerce on the identified goods.  Applicant disclaimed the word "RINGS."

The Examining Attorney finally refused registration under Section 2(d) of the Trademark Act, 15 U.S.C. §1052(d), on the ground that applicant's mark, if applied to its identified goods, would be likely to cause confusion, mistake or deception with two previously registered marks -- (i) ETERNITY for "gold alloys, gold chain, bracelets, bangles, earrings, charms, pendants and necklaces"[1]; and (ii) the mark shown below



for "jewelry";[2] both owned by the same entity, and both on the Principal Register in International Class 14.

Applicant appealed.  Briefs have been filed. Applicant did not request an oral hearing.

We affirm the refusal to register.  In reaching this conclusion, we have considered all of the relevant du Pont[3] factors.

---

[1] Registration No. 2016097, issued November 12, 1996, Section 8 affidavit accepted, Section 15 affidavit acknowledged.
[2] Registration No. 1951183, issued January 23, 1996, Section 8 affidavit accepted, Section 15 affidavit acknowledged.  The word "BANGLE" is disclaimed.
[3] See In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973).  See also, In re Majestic Distilling Company, Inc., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003).

Applicant contends that the marks, when considered in their entireties, are not similar in sound, appearance or commercial impression; that consumers will not confuse the marks; that "no single entity owns the exclusive rights to the word 'Eternity'" in the jewelry field because the term is diluted and weak due to the "prevalence of registered marks for Class 014 having the word ETERNITY (and variations thereof)" and the "evidence of widespread third-party use in a particular field" (brief, p. 3); and that applicant's mark RINGS OF ETERNITY is a combination which has not been used before and it creates a "distinctly different commercial impression" from those of the two cited registrations (brief, p. 4).

It is the Examining Attorney's position that the goods are in part identical, and/or are otherwise closely related jewelry items; that they are sold through the same trade channels to the same consumers; that applicant adopted registrant's mark ETERNITY and added descriptive words thereto; that the dominant source-identifying feature of registrant's other cited mark, ETERNITY BANGLE and design ("BANGLE" disclaimed), is the word ETERNITY; that the involved marks, when considered in their entireties, are similar in sound, appearance and commercial impression; that the few third-party registrations/applications (one

3

application owned by applicant) referred to by applicant are for marks which are distinguishable from the cited registered marks and applicant's mark, because those third-party marks each carry connotations separate and distinct from the marks involved herein (i.e., TWO FOR ETERNITY for loose diamonds and diamond jewelry and for services related to the diamond industry, and HEARTS FOR ETERNITY for cut diamonds, and applicant's other pending application for the mark 4 ETERNITY COLLECTION); and that the test is not whether consumers will confuse the marks, but whether they are likely to be confused as to the source of the goods.

The only issue we must determine is whether applicant's mark is so similar to either of the cited registered marks that when seen by purchasers used in connection with the same or similar goods it will be likely to cause confusion as to the source or origin of the goods. See Kangol Ltd. v. KangaROOS U.S.A. Inc., 974 F.2d 161, 23 USPQ2d 1945 (Fed. Cir. 1992).

We turn first to a consideration of applicant's goods vis-a-vis those of the cited registrant. We find that applicant's goods are in part identical (bracelets, necklaces, earrings and pendants) and are otherwise related to the goods in the cited registrations; and all of

4

applicant's goods are encompassed within the term "jewelry." Applicant did not argue to the contrary.

Likewise applicant did not argue, and we do not find, any differences in the channels of trade or purchasers. We must presume, given the identifications, that the goods travel in the same channels of trade, and are purchased by the same class of purchasers. See Canadian Imperial Bank of Commerce v. Wells Fargo Bank, 811 F.2d 1490, 1 USPQ2d 1813 (Fed. Cir. 1987).

Turning then to a consideration of the marks, we agree with the Examining Attorney that their similarities outweigh their differences. It is, of course, well settled that marks must be considered in their entireties. However, our primary reviewing Court has held that in articulating reasons for reaching a conclusion on the question of likelihood of confusion, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature or portion of a mark. That is, one feature of a mark may have more significance than another. See Sweats Fashions Inc. v. Pannill Knitting Co., 833 F.2d 1560, 4 USPQ2d 1793, 1798 (Fed. Cir. 1987); and In re National Data Corporation, 753 F.2d 1056, 224 USPQ 749, 752 (Fed. Cir. 1985).

Moreover, under actual market conditions, consumers generally do not have the luxury of making side-by-side comparisons. The proper test in determining likelihood of confusion is not a side-by-side comparison of the marks, but rather must be based on the similarity of the general overall commercial impressions engendered by the involved marks. See Puma-Sportschuhfabriken Rudolf Dassler KG v. Roller Derby Skate Corporation, 206 USPQ 255 (TTAB 1980).

We must consider the similarities/dissimilarities between applicant's marks and each of the two cited registrations. Applicant has added the words "RINGS OF" to the already registered mark ETERNITY; and applicant's word mark contains no design feature. Thus, it is obvious that there are some differences in the appearances of the respective marks. Nonetheless, the shared word "ETERNITY" is the dominant source-identifying portion of the marks.

The slight differences between applicant's mark RINGS OF ETERNITY and each of the cited registered marks, ETERNITY and ETERNITY BANGLE and design, may not be recalled by purchasers seeing the marks at separate times. As stated above, the proper test in determining likelihood of confusion is not on a side-by-side comparison of the marks. Rather the test must be based on the recollection of the average purchaser, who normally retains a general

6

rather than specific impression of the many trademarks encountered; that is, a purchaser's fallibility of memory over a period of time must also be kept in mind. See Grandpa Pidgeon's of Missouri, Inc. v. Borgsmiller, 477 F.2d 586, 177 USPQ 573 (CCPA 1973); and Spoons Restaurants Inc. v. Morrison, Inc., 23 USPQ2d 1735 (TTAB 1991), aff'd unpub'd (Fed. Cir. June 5, 1992).

The connotations of ETERNITY, ETERNITY BANGLE (including an infinity-type symbol), and RINGS OF ETERNITY all relate to everlastingness or simply a very long time, and in the context of jewelry, the concept of eternal love for any loved one.

We acknowledge that the similarity to the registered single-word mark ETERNITY is more prevalent. However, with regard to both cited registered marks, purchasers may well assume that applicant's mark RINGS OF ETERNITY is simply a variation of the registrant's marks, ETERNITY and ETERNITY BANGLE and design, particularly where, as here, the marks would appear on identical goods. See In re Dixie Restaurants Inc., 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).

We find that applicant's mark vis-a-vis each of the two cited registered marks is similar in sound, appearance, connotation and overall commercial impression.

7

With regard to applicant's argument that the two cited registered marks are weak, applicant referenced six registrations/applications in its brief on the case, when only four had been made of record prior thereto. Also, applicant did not provide proper copies of any of the referenced third-party registrations/applications from the USPTO's TESS or TARR systems. Instead, these printouts are from a private database source named "trademark.com." See In re Smith and Mehaffey, 31 USPQ2d 1531 (TTAB 1994); Weyerhaeuser Co. v. Katz, 24 USPQ2d 1230 (TTAB 1992); and In re Duofold Inc., 184 USPQ 638 (TTAB 1974). However, because the Examining Attorney did not object to this evidence, and in fact, he discussed the material on the merits, the Board considers all six references stipulated into the record.

The original four references consist of the two cited registrations; a registration for the mark TWO FOR ETERNITY for loose diamonds and diamond jewelry and services related to diamonds and diamond cutting; and applicant's other application for the mark 4 ETERNITY COLLECTION (stylized) for the same jewelry items as identified in the application now before us. The two newly added references are a registration for the mark HEARTS FOR ETERNITY for cut diamonds, and applicant's involved application for the mark

8

RINGS OF ETERNITY. Obviously, the involved application and the two cited registrations are not relevant to applicant's point. Of the remaining three items, the second application (also owned by applicant), as with any application, has virtually no probative value on the issue of registrability, as it is evidence only of the fact that an application was filed. To the extent applicant is arguing that inconsistent actions were taken by Examining Attorneys, the record of applicant's other application is not before us.

The remaining two third-party registrations are not sufficient evidence to establish that the cited registrant's "ETERNITY" marks are weak with regard to jewelry, especially in light of the marks and goods involved therein. Moreover, neither the Board nor any Court is bound by prior decisions of Trademark Examining Attorneys, and each case must be decided on its own merits, on the basis of the record therein. See In re Nett Designs Inc., 236 F.3d 1339, 57 USPQ2d 1564 (Fed. Cir. 2001); In re Kent-Gamebore Corp., 59 USPQ2d 1373 (TTAB 2001); and In re Wilson, 57 USPQ2d 1863 (TTAB 2001).

Finally, any doubt on the question of likelihood of confusion must be resolved against the newcomer as the newcomer has the opportunity to avoid confusion, and is

obligated to do so.  See TBC Corp. v. Holsa Inc., 126 F.3d 1470, 44 USPQ2d 1315 (Fed. Cir. 1997); and In re Hyper Shoppes (Ohio) Inc., 837 F.2d 840, 6 USPQ2d 1025 (Fed. Cir. 1988).

**Decision**:  The refusal to register under Section 2(d) is affirmed as to both cited registrations.