# United States Court of Appeals
# for the Federal Circuit

―――――――――――

(Opposition No. 91177415)

**CITIGROUP INC.,**
*Appellant,*

**v.**

**CAPITAL CITY BANK GROUP, INC.,**
*Appellee.*

―――――――――――

2010-1369

―――――――――――

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

―――――――――――

Decided: March 28, 2011

―――――――――――

MICHAEL F CLAYTON, Morgan, Lewis & Bockius LLP, of Washington, DC, argued for appellant. With him on the brief were J. KEVIN FEE and DANIEL S. MARKS.

JOSEPH W. BERENATO, III, Berenato & White, LLC, of Bethesda, Maryland argued for appellee. With him on the brief was DAVID S. TAYLOR.

―――――――――――

Before RADER, *Chief Judge*, GAJARSA, and PROST, *Circuit Judges.*

GAJARSA, *Circuit Judge.*

This is an appeal from a final decision of the Trademark Trial and Appeal Board ("T.T.A.B" or "Board") denying the opposition by Citigroup Inc. ("Citigroup") to four standard character service mark applications filed by Capital City Bank ("CCB"). *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 94 U.S.P.Q.2d 1645 (T.T.A.B. 2010). For the reasons discussed below, we affirm the T.T.A.B.'s denial of Citigroup's opposition to the registration of CCB's service mark.

## BACKGROUND

Appellant Citigroup provides commercial and consumer financial services. Citigroup owns multiple federally registered marks for financial services containing the CITI prefix, many of which are incontestable under 15 U.S.C. § 1065. *See, e.g.*, CITI, U.S. Reg. No. 1,181,467 (1981); CITICORP, U.S. Reg. No. 982,066 (1974); CITIBANK, U.S. Reg. No. 691,815 (1960). Citigroup began using the name Citibank in 1897, although its official names from the 1800s through the late 1970s included City Bank of New York, National City Bank, and First National City Bank. J.A. 32. In 1976, Citigroup legally changed its name from First National City Bank to Citibank, N.A.

Third-party brand valuation surveys, including by Interbrand and Millward Brown, indicate that the CITIBANK brand is one of the most valuable brands in the world. *Citigroup*, 94 U.S.P.Q.2d at 1658. Courts have deemed the CITIBANK mark "famous" for trademark analysis purposes. *See, e.g.*, *Citibank, N.A. v. City Bank of San Francisco*, 206 U.S.P.Q. 997, 1004 (N.D. Cal. 1980).

Citigroup seeks to keep the federal registry and marketplace free of marks it considers confusingly similar to its marks through cease-and-desist letters, opposition proceedings, negotiations, and lawsuits.

Appellee CCB was formed in 1895 in Florida's state capital, Tallahassee. CCB has a multi-state presence including sixty-nine branches in Florida, Georgia, and Alabama; automated teller machines; and a website that serves customers in all fifty states. In 1995, CCB filed three service mark applications for banking services. Each contained the phrase "CAPITAL CITY BANK" along with a design consisting of a five-pointed star inside of a circle. *See, e.g.*, U.S. Reg. No. 2,007,889 (1996):



Beginning in June 2006, CCB filed a series of four new applications: CAPITAL CITY BANK, Serial No. 78/906,010 (filed June 12, 2006); CAPITAL CITY BANK INVESTMENTS, Serial No. 78/909,113 (filed June 15, 2006); CAPITAL CITY BANK GROWING BUSINESS, Serial No. 78/930,103 (filed July 14, 2006); and CAPITAL CITY BANC INVESTMENTS, Serial No. 78/934,941 (filed July 21, 2006). Unlike the prior applications, these applications contained standard character drawings and were, therefore, not limited to any particular font style, size, color, or design element. On May 21, 2007, Citigroup filed a timely Notice of Opposition with the T.T.A.B. against each of CCB's standard character applications. Citigroup based its opposition on two grounds: the likelihood of confusion between CCB's applications and Citigroup's marks and the likelihood of dilution by blurring. CCB denied all of the claims alleged by Citigroup.

In its opinion, the T.T.A.B. treated all four applications as one and evaluated the likelihood of confusion under the thirteen factors listed in *Application of E.I. DuPont De Nemours & Co.*, 476 F.2d 1357, 1362 (CCPA 1973) ("*DuPont*"). *Citigroup*, 94 U.S.P.Q.2d at 1657-65. The T.T.A.B. found that four of the six relevant likelihood of confusion factors favored Citigroup: (1) the fame of the CITIBANK mark; (2) the similarity of Citigroup's services and the services described in the applications; (3) the similarity of Citigroup and CCB's trade channels; and (4) the similarity of their consumers. *Id.* at 1657-60. The T.T.A.B. found that two of the *DuPont* factors favored CCB: (1) the nature and extent of any actual confusion and (2) the similarity of the marks. *Id.* at 1660-65. After weighing the factors, the T.T.A.B. determined that neither a likelihood of confusion nor dilution would arise from the registration of CCB's marks and dismissed Citigroup's opposition. *Id.* at 1664-69.

On appeal, Citigroup does not address any dilution issues because it contends that "proper consideration of all the reasonable manners of display demonstrates a clear likelihood of confusion" and "this Court need not consider the issue of dilution to reverse the Board's dismissal below." Appellant's Br. 11. This court, therefore, will consider only the issue of likelihood of confusion between CCB's applications and Citigroup's marks. We have jurisdiction over the timely filed appeal pursuant to 15 U.S.C. § 1071(a) and 28 U.S.C. § 1295(a)(4)(B).

DISCUSSION

We must affirm the T.T.A.B.'s factual determinations unless they are arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence. *Recot Inc. v. M.C. Becton*, 214 F.3d 1322, 1327 (Fed. Cir. 2000). The T.T.A.B.'s ultimate conclusion in a Lanham Act section

2(d) (15 U.S.C. § 1052(d)) analysis of whether a likelihood of confusion exists is an issue of law based on the underlying facts and is reviewed *de novo* by this court. *In re Save Venice New York Inc.*, 259 F.3d 1346, 1351-52 (Fed. Cir. 2001).

Under section 2(d) of the Lanham Act, registration of a mark must be refused if it

> so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1052(d). "Standard character" or "typed" registrations are federal mark registrations that make no claim to any particular font style, color, or size of display and, thus, are not limited to any particular presentation. *See, e.g.*, 37 C.F.R. § 2.52; *Phillips Petroleum Co. v. C.J. Webb, Inc.*, 442 F.2d 1376, 1378 (CCPA 1971). Whether a likelihood of confusion exists between an applied-for mark and a previously registered mark is determined on a case-by-case basis, aided by application of the *DuPont* factors. *On-Line Careline v. Am. Online*, 229 F.3d 1080, 1085 (Fed. Cir. 2000).

First, we examine the T.T.A.B.'s analysis of the two *DuPont* factors contested on appeal: the similarity of the marks and the "nature and extent of any actual confusion." Then we conclude the legal analysis by balancing the *DuPont* factors and assessing the likelihood of confusion between the parties' respective marks.

I.

The T.T.A.B.'s factual findings regarding the similarity of the marks and the "nature and extent of any actual confusion" are supported by substantial record evidence. Evidence is substantial if "a reasonable person might find that the evidentiary record supports the agency's conclusion." *On-Line Careline*, 229 F.3d at 1085. The T.T.A.B's finding may be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence. *Id.* at 1086.

A.

The T.T.A.B. determined that the *DuPont* factor assessing the "similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation, and commercial impression" favored CCB. *Citigroup*, 94 U.S.P.Q.2d at 1664. Upon examination of the record as a whole, we conclude that substantial evidence supports the T.T.A.B.'s factual finding that CCB's marks are not similar to Citigroup's marks. The evidentiary record details the distinctive spellings of the marks at issue, third-party usage of the phrase "City Bank" in the financial services industry, and the role of the word "Capital" in distinguishing CCB's marks from Citigroup's marks. We address each of these in turn.

CCB's marks are spelled differently than Citigroup's marks. This court has found mark dissimilarity when the words are spelled differently. *See, e.g.*, *Champagne Louis Roederer, S.A. v. Delicato Vineyards*, in which this court found mark dissimilarity between CRISTAL and CRYSTAL CREEK. 148 F.3d 1373, 1374-75 (Fed. Cir. 1998). Citigroup's marks are single words and all feature the C-I-T-I spelling. According to the record, CCB has never displayed its marks with "City" spelled C-I-T-I or with the words "City Bank" as a single compound word.

J.A. 650. As the T.T.A.B. explained, "CAPITAL CITY BANK does not share the characteristics of the CITIBANK family of marks because (1) it starts with the word 'Capital,' not CITIBANK, (2) 'City Bank' is two words, not a compound word, and (3) applicant's 'City' is spelled with a 'y,' not an 'i.'" *Citigroup*, 94 U.S.P.Q.2d at 1657.

Similarly, in *Citigroup Inc. v. City Holding Co.*, a district court found that the "I/Y distinction is critical, though the marks are aurally identical." 171 F. Supp. 2d 333, 345 (S.D.N.Y. 2003). That court ruled that "the distinctive quality [i.e., spelling] of the CITI mark, the extent of usage of both marks, both in time and geography . . . demonstrate that the aural identity is overcome by the written differentiation." *Id.* at 349. The district court explained that the "I" misspelling is the foundation of the CITI marks' distinctiveness and the basis of Citigroup's trademark protection policy. *Id.* at 347. We agree with the reasoning of that court.

Citigroup itself distinguishes its C-I-T-I spelling from marks containing the word "City." When seeking to register the mark CitiMortgage in Ohio, Citigroup represented to the Ohio Secretary of State that "[t]he public will understand that CitiMortgage, Inc. is associated with and part of the Citigroup family." *Id.* at 340-41. It also maintained that "CitiMortgage" would not cause confusion with the senior mark "City Mortgage." *Id.* Citigroup also noted that "because 'City' is a commonly used prefix for financial services corporations, Citigroup and its many subdivisions that bear the famous CITI prefix have coexisted with many 'City' entities for years in virtually every jurisdiction." *Id.*

In addition to distinct spellings, the T.T.A.B. also relied on the frequent usage of the phrase "City Bank" in the banking industry. *Citigroup*, 94 U.S.P.Q.2d at 1664. The Board found that consumers view CITY as either part of a geographic name or as evoking a community bank. *Id.* In *Citigroup Inc., v. City Holding Co.*, the District Court for the Southern District of New York listed over twenty third-party banks using marks containing CITY and BANK as evidence of third-party use in the field of financial services. 171 F. Supp. 2d at 341-42. Citigroup itself concedes that it does not pursue third-party uses of marks containing the phrase "CITY BANK" that include a distinguishing logo, designate a specific location, or occur only within a single community. Appellants Br. 19.

In its opinion, the T.T.A.B. considered forty different websites for banking entities whose names contained the term "City Bank," including Surf City Bank, Gate City Bank, Lake City Bank, and Hastings City Bank. *Citigroup*, 94 U.S.P.Q.2d at 1662-63. Several of these banks present their "City Bank" marks with the words "City Bank" on a separate line below the remainder of the mark. The T.T.A.B. found that "[n]otwithstanding the various uses of 'City Bank,' these uses do not diminish the strength of [Citigroup]'s mark." *Id.* at 1664.

Citigroup contends that registration of standard character marks containing the phrase "CITY BANK" could make its efforts to police the federal registry and preserve the strength of the CITIBANK mark more difficult. Appellant's Reply Br. 26. Citigroup does not object to CCB registering "CAPITAL CITY" in standard characters. Appellant's Br. 4. Denying CCB's registration would not prevent CCB from achieving the same commercial effect. If CCB obtained the mark CAPITAL CITY in standard character form and combined it with the term BANK, which the T.T.A.B. deemed generic, *Citigroup*, 94

U.S.P.Q.2d at 1664, it could effectively achieve the standard character mark it seeks, CAPITAL CITY BANK. Additionally, the federal registry is not free of third-party standard character marks containing the phrase CITY BANK. Surf City Bank's standard character mark SURF CITY BANK is federally registered as U.S. Reg. No. 3,240,918 (2007). 94 U.S.P.Q.2d at 1663. The only difference between the SURF CITY BANK mark and CAPITAL CITY BANK is the substitution of the word CAPITAL.

The T.T.A.B. also examined the role of the word "Capital" in distinguishing CCB's marks from Citigroup's marks. As explained in *Kangol Ltd. v. KangaROOS U.S.A., Inc.*, "a particular feature of a mark may be more obvious or dominant." 974 F.2d 161, 163 (Fed. Cir. 1992). The T.T.A.B. determined that "'CAPITAL CITY' is the dominant element in creating the commercial impression engendered by [CCB]'s marks" because it is located at the beginning of the marks. *Citigroup*, 94 U.S.P.Q.2d at 1664. As the first word of the mark, the Board determined that "Capital" gives CCB's marks a distinct look and sound from Citigroup's marks. Further, CCB's applications disclaim BANK and when a mark consists of two or more words, some of which are disclaimed, the word not disclaimed is generally regarded as the dominant or critical term. *In re Dixie Rests. Inc.*, 105 F.3d 1405, 1407 (Fed. Cir. 1997) (finding "delta" the dominant part of the mark "THE DELTA CAFÉ because CAFÉ was disclaimed").

Although "Capital City" is the dominant part of the mark, Citigroup argues that because "capital is a commonly understood financial term," it "does little, if anything to reduce the similarities between the marks" and "[c]ustomers are likely to assume that capital . . . CITY BANK is a financial service offered by Citigroup." Appel-

lant's Br. 8-9.  This argument is unpersuasive.  "Capital" is not merely a descriptive financial term—it has geographic connotations and, here, refers to Tallahassee, the capital of Florida.

Citigroup cites *In re Mighty Leaf Tea* in support of its argument that the presence of an additional term in a mark, such as CAPITAL, does not necessarily eliminate the likelihood of confusion.  601 F.3d 1342, 1348 (Fed. Cir. 2010).  In *Mighty Leaf Tea*, this court affirmed the T.T.A.B.'s rejection of Mighty Leaf Tea's application for registration of the mark "ML" in standard character form for use with personal care and skin care products because the mark "ML MARK LEES" was already registered for skin care products.  *Id.*  In response to the rejection, Mighty Leaf Tea argued that it sought to register the mark ML in standard character form, as distinguished from the already registered stylized mark, and contended that "the existence of many similar marks showed the weakness of the registered marks, such that consumers would look to fine distinctions to distinguish the sources of goods."  *Id.* at 1345.  Mighty Leaf Tea submitted evidence of several third-party registrations and pending applications that included the letters "ML" along with other letters.  *Id.*  This court held that the Board's findings that the goods were identical in part and that consumer confusion was likely between ML and ML MARK LEES were supported by substantial evidence.  *Id.* at 1348.  The third-party registrations including the letters "ML" did "not render the marks so similar and weak that the public would be alert to small differences," particularly when there was no evidence of third-party use of any of the cited marks.  *Id.* at 1346-47.  Additionally, in that case, "[a]pplicant's mark would appear to prospective purchasers to be a shortened form of registrants' mark."  *Id.* at 1348.

The facts of *Mighty Leaf Tea* differ from this case in some critical ways. In *Mighty Leaf Tea*, the exact same "ML" mark was already in use, whereas here, CCB's mark is spelled differently, is not a compound word, and is not a short or long form of Citigroup's existing marks. Also, here, third-party usage of marks ending in "City Bank" suggests that the public is sensitive to differences in the first word of the name of a bank.

Citigroup maintains that because a footnote in the T.T.A.B.'s opinion noted that minimizing "CAPITAL" and emphasizing "CITY BANK" is not a "reasonable manner" of depicting CCB's marks, the T.T.A.B. did not consider as many variations of CCB's marks as it should have. *Citigroup*, 94 U.S.P.Q.2d at 1664. Both parties cite *Phillips*, 442 F.2d 1376, as the source of the doctrine that only "reasonable" manners of depicting a standard character mark are considered. In the *Phillips* case, Phillips opposed Webb's typed mark[1] "CRC MARINE FORMULA 6-66" for rust and corrosion inhibitors because it had already registered the mark "66" for marina services, cleaners, and lubricants. *Id.* at 1377. "In trying to visualize what other forms the mark might appear in," the court was "aided by the specimens submitted with Webb's application as 'illustrating the mark as actually used.'" *Id.* Webb's use depicted "the 6-66 portion of the mark much more prominently than the CRC MARINE FORMULA portion" with the first "6" at a different level

---

[1] Until 2003, "standard character" marks were known as "typed" marks. The United States Patent and Trademark Office changed the nomenclature in 2003 to conform to the Madrid Protocol. *See* Rules of Practice for Trademark-Related Filings under the Madrid Protocol Implementation Act, 68 Fed. Reg. 55,748, 55,755 (2003) (explaining revisions to 37 C.F.R. § 2.52).

from the later "66."  *Id.*  The court concluded that "the mark CRC MARINE FORMULA 6-66, in some forms at least, so resembles '66' that confusion, mistake or deception is likely" and reversed the T.T.A.B.'s decision dismissing the opposition.  *Id.* at 1379.

Neither *Phillips* nor any other opinion of the United States Court of Customs and Patent Appeals, our predecessor court, or this court has endorsed the T.T.A.B.'s "reasonable manner" limitation of variations evaluated in the *DuPont* analysis.  Although this court has never adopted such a rule, the T.T.A.B. has applied it in numerous proceedings.  *See, e.g., ProQuest Info. & Learning Co. v. Jacques R. Island*, 83 U.S.P.Q.2d 1351, 1359 (T.T.A.B. 2007) ("[W]hen a mark is presented in a typed or standard character format, the Board must consider all reasonable manners in which applicant could depict its mark."); *Jockey Int'l Inc. v. Mallory & Church Corp.*, 25 U.S.P.Q.2d 1233, 1235 (T.T.A.B. 1992) (stating that the registration of opposer's mark in typed format "requires consideration of all ordinary and reasonable manners in which its mark could be depicted," including in typical script form); *INB Nat'l Bank v. Metrohost Inc.*, 22 U.S.P.Q.2d 1585, 1588 (T.T.A.B. 1992) ("[W]hen applicant seeks a typed or block letter registration of its word mark, then the Board must consider all reasonable manners in which those words could be depicted.").

The T.T.A.B.'s "reasonable manner" standard limits the range of marks considered in the *DuPont* analysis.  If the registrant complies with Section 2.52 of the Rules of Practice in Trademark Cases and obtains a standard character mark without claim to "any particular font style, size or color," the registrant is entitled to depictions of the standard character mark regardless of font style, size, or color, not merely   "reasonable manners" of depicting its standard character mark.  The consideration of

only "reasonable" manners of depicting a standard character mark is unsupported by anything other than T.T.A.B practice. The T.T.A.B. should not first determine whether certain depictions are "reasonable" and then apply the *DuPont* analysis to only a subset of variations of a standard character mark. The T.T.A.B. should simply use the *DuPont* factors to determine the likelihood of confusion between depictions of standard character marks that vary in font style, size, and color and the other mark. As explained in *Phillips*, illustrations of the mark as actually used may assist the T.T.A.B. in visualizing other forms in which the mark might appear.

Citigroup also interprets the T.T.A.B.'s observation that CCB's past displays of its marks have not emphasized CITY BANK as indicating that the T.T.A.B. only considered marks as they were previously used. In accordance with *Cunningham v. Laser Golf Corp.*, the T.T.A.B. used current and past commercial displays of the applied-for mark to inform but not to restrict its analysis of potential displays. 222 F.3d 943 (Fed. Cir. 2000). In *Cunningham*, this court canceled the junior mark LASERSWING for a golf practice device in light of the senior mark LASER for golf clubs and golf balls. *Id.* at 950. This court ruled that because the mark at issue is the mark as registered, not as it is used, a respondent in a cancellation proceeding could not argue that his typed mark is dissimilar from petitioner's based on his distinctive font, color, logo, and accompanying house mark. *Id.* at 949-50.

The T.T.A.B.'s opinion addresses the range of marks encompassed by the standard character format of the marks in CCB's application. *Citigroup*, 94 U.S.P.Q.2d at 1662-64. The T.T.A.B. determined that given the widespread use of CITY BANK, BANK is a generic banking term and CITY is part of a geographic name or identifies

a community bank. *Id.* at 1664. Thus, it would not be reasonable for CCB to present itself in a manner not distinguishing itself from these third-party banks. Cf. *DuPont*, 476 F.2d at 1362 ("It can be safely taken as fundamental that reputable businessmen-users of valuable trademarks have no interest in causing public confusion."). Although the Board's reference to "reasonable manners" of depicting CCB's marks in its opinion is ambiguous and unduly narrow, substantial evidence supports the T.T.A.B.'s finding that CCB's marks are dissimilar in appearance, sound, connotation, and commercial impression from Citigroup's marks.

## B.

We next address the *DuPont* factor assessing the "nature and extent of any actual confusion." Substantial evidence supports the T.T.A.B.'s factual finding of the absence of actual confusion. As the T.T.A.B. noted, concurrent use in the same geographic markets since 1975 presented "a reasonable opportunity for confusion to have occurred" but neither party is aware of any actual confusion between the parties' marks. *Citigroup*, 94 U.S.P.Q.2d at 1661. CCB and Citigroup have nineteen bank branches near each other. *Id.* Additionally, market research indicates that Citigroup's renown extends nationwide, even if it does not have branches in all geographic regions. The T.T.A.B. reasoned that

> considering the widespread advertising of opposer's marks and the identity of the services, if the marks were similar then it is likely that there would be some reported instances of confusion or mistake as to source such as misdirected telephone calls, visits, or requests for information or other indicia of confusion in the marketplace.

*Id.* at 1664.

In contrast, in *Citibank, N.A. v. City Bank of San Francisco*, Citigroup asserted its Citibank International San Francisco mark against the City Bank of San Francisco. 206 U.S.P.Q. at 1002. The court found it "extremely significant" that many instances of actual confusion arose after less than one month of concurrent use of the marks. *Id.* at 1009.

On appeal, Citigroup asserts that it has offered services under the brand "CitiCapital" and, therefore, CCB's standard character marks could damage the value and goodwill associated with its marks. Appellant's Br. 9. Although this argument could be considered waived, it also lacks merit. The CITICAPITAL mark was not used in commerce until November 2000, well after the 1995 priority dates of CCB's applications. Also, Citigroup offers no evidence of any confusion between the CitiCapital brand and CCB.

Citigroup argues that the significance of the absence of actual confusion is negated because CCB has not used all of the potential variations of the standard character mark. Citigroup cites *Nina Ricci, S.A.R.L. v. E.T.F. Enterprises, Inc.*, 889 F.2d 1070, 1073-74 (Fed. Cir. 1989), in support of its argument. But in *Nina Ricci*, the absence of actual confusion had no probative value because no products bearing the mark had been sold and the extent of usage of the mark was unknown. Unlike the mark at issue in *Nina Ricci*, CCB's marks have been used commercially in overlapping markets.

Although the most potentially confusing form of CCB's marks, that is, a version deemphasizing "Capital" and emphasizing "City Bank," has not yet been used, the critical words are all in use and there is no evidence of actual confusion. Substantial evidence supports the

T.T.A.B.'s analysis of the similarity of the marks and the nature and extent of any actual confusion.

### III.

After weighing the relevant *DuPont* factors, we conclude that the T.T.A.B. did not err in finding no likelihood of confusion between the parties' respective marks. Not all of the *DuPont* factors are necessarily "relevant or of equal weight in a given case, and any one of the factors may control a particular case." *In re Majestic Distilling Co.*, 315 F.3d 1311, 1315 (Fed. Cir. 2003) (internal quotation marks omitted).

Six of the thirteen *DuPont* factors are relevant to this case:

(1) The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.

(2) The similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use.

(3) The similarity or dissimilarity of established, likely-to-continue trade channels.

(4) The . . . buyers to whom sales are made.

(5) The fame of the prior mark (sales, advertising, length of use). . . .

(7) The nature and extent of any actual confusion.

476 F.2d at 1361. The T.T.A.B. is not required to discuss every *DuPont* factor and may find a single factor dispositive. *See, e.g.*, *Kellogg Co. v. Pack'em Enters. Inc.*, 951 F.2d 330, 333 (Fed. Cir. 1991).

The first *DuPont* factor assesses the fame of the CITIBANK mark. A famous mark has "extensive public recognition and renown." *Bose Corp. v. QSC Audio Prod.'s Inc.*, 293 F.3d 1367, 1371 (Fed. Cir. 2002). Here, the T.T.A.B. found that CITIBANK is a famous mark. *Citigroup*, 94 U.S.P.Q.2d at 1658. As the T.T.A.B. noted, "[f]ame, if it exists, plays a dominant role in the likelihood of confusion analysis because famous marks enjoy a broad scope of protection or exclusivity of use." *Id.* at 1657; *accord Recot*, 214 F.3d at 1327. The "fame of a mark may be measured indirectly, among other things, by the volume of sales and advertising expenditures of the goods traveling under the mark, and by the length of time those indicia of commercial awareness have been evident." *Bose Corp.*, 293 F.3d at 1371. The T.T.A.B. reviewed the press coverage of Citibank, corporate studies tracking brand awareness of the CITIBANK mark, and brand valuations by independent research agencies. *Citigroup*, 94 U.S.P.Q.2d at 1658. Studies conducted in the 1990s indicated that the CITIBANK mark had a 90-95% level of unaided awareness. *Id.* Substantial evidence supports the T.T.A.B's finding that CITIBANK is a famous mark.

The second *DuPont* factor is the similarity and nature of Citigroup's services and the services described in CCB's applications. When trademarks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion declines. *See Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 877 (Fed. Cir. 1992). CCB seeks to register marks for:

> Brokerage and administration services in the fields of securities, namely, mutual funds, stocks and bonds, annuities, tax advantaged securities, money market funds, and self directed retirement

accounts, including IRA portfolio management, 401(k) portfolio management, Simple IRA, and Roth IRA portfolio management.

*Citigroup*, 94 U.S.P.Q.2d at 1659.

The CITIBANK mark is registered for, inter alia, "securities and mutual fund investment; brokerage and trading services; investment advisory and consulting services; securities brokerage and trading services." *Id.* Substantial evidence supports the T.T.A.B.'s finding that the services in CCB's applications are essentially identical to Citigroup's services. The second *DuPont* factor favors Citigroup.

Because the parties' trade channels and classes of consumers are unrestricted, the third and fourth *DuPont* factors also favor Citigroup. As this court explained in *Hewlett Packard Co. v. Packard Press, Inc.*, "absent restrictions in the application and registration, goods and services are presumed to travel in the same channels of trade to the same class of purchasers." 281 F.3d 1261, 1268 (Fed. Cir. 2002). We agree with the T.T.A.B.'s finding that the trade channels and classes of consumers at issue are identical or nearly identical.

Citigroup argues that the T.T.A.B. incorrectly weighed the *DuPont* factors. Citigroup's approach of mechanically tallying the *DuPont* factors addressed is improper, as the factors have differing weights. Although the T.T.A.B. deemed the CITIBANK mark famous, fame is only one of the thirteen *DuPont* factors. CCB's marks do not employ the C-I-T-I spelling or compound word structure, characteristics that contribute to the fame of Citigroup's marks. Because those characteristics are not present in CCB's marks, the fame factor is less persuasive than it is typically. Pervasive third-party use of the phrase "City Bank" in marks for financial services also

limits the protection afforded to the CITIBANK mark. The dissimilarity of the marks in their entireties as to appearance, sound, connotation, and commercial impression strongly supports a finding of no likelihood of confusion. Additionally, no instances of actual confusion have been reported despite opportunities for confusion to have occurred. But because a standard character registration would cover potential variations of the CCB applications that create a different commercial impression from CCB's past uses, the "actual confusion" factor has limited probative value in this case.

After considering the relevant *DuPont* factors favoring Citigroup against those favoring CCB, we conclude that CCB's marks are not likely to cause confusion with Citigroup's marks.

## CONCLUSION

We conclude that no likelihood of confusion would arise from the registration of CCB's marks for banking and financial services and Citigroup's marks for the same services. We affirm the T.T.A.B.'s denial of Citigroup's opposition to the registration of CCB's marks.

## **AFFIRM**

### COSTS

Each party shall bear its own costs.