This Opinion Is a
Precedent of the TTAB

Mailed: September 14, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Christopher C. Hinton*

————

Serial No. 85713080

————

Luke Brean of BreanLaw, LLC,
    for Christopher C. Hinton

Robert J. Struck, Trademark Examining Attorney, Law Office 109,
    Dan Vavonese, Managing Attorney.

————

Before Bucher, Masiello, and Hightower,
    Administrative Trademark Judges.

Opinion by Hightower, Administrative Trademark Judge:

Christopher C. Hinton ("Applicant") seeks registration on the Principal Register of the mark **THCTea** (in standard characters) for "tea-based beverages" in International Class 30.[1]

The Trademark Examining Attorney has refused registration of Applicant's mark under Trademark Act Section 2(e)(1), 15 U.S.C. § 1052(e)(1), on the ground that the mark is deceptively misdescriptive of a feature of the identified goods.

---

[1] Application Serial No. 85713080 was filed on August 26, 2012, based on Applicant's claim of first use anywhere and use in commerce since at least as early as August 13, 2012.

When the refusal was made final, Applicant appealed and requested reconsideration. After the Examining Attorney denied the request for reconsideration, the appeal was resumed. We affirm the refusal to register.

Analysis

The test for deceptive misdescriptiveness under Section 2(e)(1)[2] has two parts. First, we must determine whether the matter sought to be registered misdescribes the goods or services. In order for a term to misdescribe goods or services, "the term must be merely descriptive, rather than suggestive, of a significant aspect of the goods or services which the goods or services plausibly possess but in fact do not." *In re Phillips-Van Heusen Corp.*, 63 USPQ2d 1047, 1051 (TTAB 2002); *see also In re Shniberg*, 79 USPQ2d 1309, 1312 (TTAB 2006). Second, if the term misdescribes the goods, we must ask whether consumers are likely to believe the misrepresentation. *In re White Jasmine LLC,* 106 USPQ2d 1385, 1394 (TTAB 2013); *In re Phillips-Van Heusen Corp.*, 63 USPQ2d at 1048; *In re Quady Winery Inc.*, 221 USPQ 1213, 1214 (TTAB 1984). The Board has applied the reasonably prudent consumer test in assessing whether a proposed mark determined to be misdescriptive involves a misrepresentation consumers would be likely to believe. *See R. J. Reynolds Tobacco Co. v. Brown & Williamson Tobacco Corp.*, 226 USPQ 169, 179 (TTAB 1985).

Whether THCTea Misdescribes Applicant's Tea-Based Beverages

The Examining Attorney introduced a dictionary definition showing that THC, from tetrahydrocannabinol, is "either of two physiologically active isomers $C_{21}H_{30}O_2$

---

[2] We note that the issue of whether Applicant's mark is deceptive under Trademark Act Section 2(a) is not before us.

from hemp plant resin; *especially* : one that is the chief intoxicant in marijuana."[3]

There is no dictionary or other evidence demonstrating that the term THC has any

other established meaning.[4]

The Examining Attorney also introduced evidence showing that it is plausible

for tea-based beverages to contain THC. This includes printouts from several online

chat rooms in which participants discussed recipes and methods of brewing tea

featuring THC – often calling the resulting beverage "THC tea" – particularly for

medicinal purposes. This evidence includes:

- A discussion titled "THC Tea – Stems & Seeds" on bluelight.org.[5]

- A discussion in a forum on grasscity.com titled "Thc Tea" in which "IndianaToker" shares two recipes for tea containing marijuana, represented to be courtesy of the Women's Alliance for Medical Marijuana in Santa Cruz, CA.[6]

- A recipe from thestonerscookbook.com for "Marijuana Tea / Weed Tea" which discusses the solubility of THC. A comment from "Old Hippie" refers to "this THC tea."[7]

- A discussion thread titled "Weed Tea" on a 420magazine.com forum which also discusses the solubility of THC. "Alaska Lady" notes that "I have been pleasantly blurred while drinking THC Tea."[8]

---

[3] September 5, 2012 Office Action at 2 (from Merriam-Webster.com).

[4] As discussed in the next section, we are not persuaded that consumers would recognize THC as used in Applicant's mark as an abbreviation of either "Tea Honey Care" or "The Honey Care Tea," as is asserted by Applicant but unsupported by any objective evidence. Once a *prima facie* case is established, the burden of coming forward with competent evidence in rebuttal shifts to Applicant. *In re Pacer Tech.*, 338 F.3d 1348, 67 USPQ2d 1629, 1632 (Fed. Cir. 2003).

[5] April 17, 2014 Denial of Request for Reconsideration at 14-16.

[6] February 22, 2013 Office Action at 2-5; *see also* April 17, 2014 Denial of Request for Reconsideration at 17-21 (printouts from same forum).

[7] April 17, 2014 Denial of Request for Reconsideration at 2-6.

[8] *Id.* at 7-13.

- A recipe for marijuana tea from the cannabissearch.com website, which notes: "THC is not particularly water-soluble, even when boiled and adding butter or oil helps to release the THC." In the discussion following the recipe, several posts refer to THC and one to "thc tea."[9]

- A Wikipedia article on "Cannabis tea," which discusses "the active ingredient THC" and states: "Because of its smokeless form of ingestion, it is preferred by some as a method of using the plant for medicinal purposes."[10]

Applicant admits that the evidence submitted by the Examining Attorney "establishes the significance of both 'THC' and that some individuals refer to tea made from Marijuana as THC Tea."[11]

Based on the evidence of record, we find that it is plausible that tea-based beverages could contain THC and that **THCTea**, when used for tea-based beverages, is merely descriptive for tea containing THC as a significant ingredient.

Applicant states that his goods do not contain THC or any other controlled substance prohibited by the Controlled Substances Act, 21 U.S.C. §§ 801-971.[12] Because Applicant's tea-based beverages do not contain THC as that term is defined in the dictionary evidence of record, we find that **THCTea** misdescribes the goods.

---

[9] February 22, 2013 Office Action at 6-15.

[10] September 12, 2013 Office Action at 28-29. The Board gives guarded consideration to evidence taken from Wikipedia, bearing in mind the limitations inherent in this reference work, so long as the non-offering party has an opportunity to rebut the evidence by submitting other evidence that may call its accuracy into question. *See In re IP Carrier Consulting Group*, 84 USPQ2d 1028, 1032 (TTAB 2007). In the case before us, the Wikipedia evidence was submitted with the Examining Attorney's final Office Action, and Applicant had an opportunity to rebut it in his Request for Reconsideration.

[11] Appeal Brief at 6, 22 TTABVUE at 7.

[12] *See* January 26, 2013 Response to Office Action at 3; August 20, 2013 Response to Office Action at 2; March 12, 2014 Request for Reconsideration at 3; Appeal Brief at 2, 22 TTABVUE at 3 ("The Applicant is not manufacturing, distributing, dispensing, or possessing any controlled substances.").

<u>Whether Consumers Are Likely to Believe the Misrepresentation</u>

The second prong of our inquiry is whether reasonably prudent consumers are likely to believe the misrepresentation that Applicant's beverages contain THC.

Applicant states that the THC portion of his proposed mark is intended to stand not for the dictionary meaning of that term, but for either "Tea Honey Care"[13] or "The Honey Care Tea."[14] Applicant submitted the following two "example advertisements":[15]

 

As the Examining Attorney notes in his brief, these advertisements do not contain the applied-for term. We must consider the term that Applicant seeks to register as it is set forth in the Application. We cannot assume that Applicant has displayed or will always display his proposed mark in combination with words such as "Tea Honey Care" or "The Honey Care Tea." *Cf. Citigroup Inc. v. Capital City Bank*

---

[13] Applicant's Brief at 3, 22 TTABVUE at 4.

[14] *Id.* at 4, 22 TTABVUE at 5.

[15] March 12, 2014 Request for Reconsideration at 5-6.

*Group Inc.*, 637 F.3d 1344, 98 USPQ2d 1253, 1256 (Fed. Cir. 2011) (noting that standard character marks are not limited to any particular presentation); *Vornado, Inc. v. Breuer Elec. Mfg. Co.*, 390 F.2d 724, 156 USPQ 340, 342 (CCPA 1968) (noting that "the display of a mark in a particular style is of no material significance since the display may be changed at any time as may be dictated by the fancy of the applicant or the owner of the mark"); *Frances Denney v. Elizabeth Arden Sales Corp.*, 263 F.2d 347, 120 USPQ 480, 481 (CCPA 1959) ("In determining the applicant's right to registration, only the mark as set forth in the application may be considered; whether or not the mark is used with an associated house mark is not controlling."). Indeed, on Applicant's specimen of use, the proposed mark is displayed without any such accompanying wording:



There is no evidence that consumers encountering Applicant's goods would interpret THC as signifying either "Tea Honey Care" or "The Honey Care Tea."

Both Applicant and the Examining Attorney introduced evidence relating to the legal status of marijuana under various state laws and summarizing the laws governing the medicinal use of marijuana in as many as 21 states and the District of Columbia.[16] The Examining Attorney also introduced a November 8, 2012 news story about the passage of state law ballot initiatives in Colorado and Washington allowing marijuana for recreational use.[17]

Relying on this evidence, the Examining Attorney argues that consumers are likely to believe that Applicant's goods contain THC because such goods "are lawful under local laws and available in some states and the District of Columbia." "While cannabis and items containing cannabis remain unlawful under Federal law," the Examining Attorney writes, "consumers are able to purchase cannabis, as well as drinks and teas containing cannabis and THC, for both medical and recreational use in certain states and the District of Columbia."[18]

In contrast, Applicant argues that the restrictions on marijuana and THC make it unlikely consumers will perceive his goods as containing a controlled substance:

---

[16] August 20, 2013 Response to Office Action, Exhibit A, at 6-17 ("18 Legal Medical Marijuana States and DC"); September 12, 2013 Office Action at 2-22 ("20 Legal Medical Marijuana States and DC"); April 17, 2014 Denial of Request for Reconsideration at 32-56 ("21 Legal Medical Marijuana States and DC"). All three lists are printed from ProCon.org.

[17] September 12, 2013 Office Action at 23-27.

[18] Examining Attorney's Brief at unnumbered page 9, 24 TTABVUE at 10. In the initial Office Action, issued September 5, 2012, the application was refused registration on the grounds that the proposed mark is merely descriptive under Trademark Act § 2(e)(1) and also that it is not in lawful use in commerce under §§ 1 and 45. After Applicant stated in his January 26, 2013 Response to Office Action that his goods "do not contain THC or any other controlled substances prohibited by the Controlled Substances Act," the latter refusal was withdrawn and the misdescriptiveness refusal issued in the February 22, 2013 Office Action. Thus, the question whether a mark for goods containing THC is in lawful use under §§ 1 and 45 is not before us.

A consumer of average intelligence is well aware that possession of marijuana and THC is illegal under federal law. Even in the 18 states where there are "medical marijuana" laws, possession is limited to those who have a documented medical condition, often terminal in nature, and possession is still tightly regulated with various bureaucratic hoops for an individual to jump through before possession is permitted under limited circumstances.

Finally, it is [a] regularly reported topic in the news about the conflict between state legalization efforts and the status of marijuana and THC as federally controlled substances. As such, it would be a rather gullible, uninformed consumer that would think that a bottle [of] THCTEA available in a grocery store, a gas station, a coffee shop, or other places that tea based beverages appear would contain a substance that is illegal under federal law and illegal under most state laws. As such THCTEA is not likely to be perceived by the reasonably prudent purchaser as describing a feature or characteristic of the product and thus the mark is not deceptively misdescriptive.[19]

We note that the application is not restricted to any geographic region or channel of trade. Therefore, we must presume that Applicant's tea could be offered where marijuana possession is considered legal under state law in certain circumstances. Record evidence shows that to be the case in nearly half of U.S. states.

The record provides little information regarding retail sales of tea-based beverages containing THC; as noted, most of the evidence pertains to brewing such beverages at home. There is, however, some evidence that teas containing THC are commercially available, at least for medicinal use:

---

[19] Applicant's Brief at 7, 22 TTABVUE at 8.

- A post from "Andy J" on the cannabissearch.com website dated March 18, 2011 states: "Ever since I got my card I have seen this 'Shirleys' brand of sweet tea in most stores here in Fresno. This is some awesome stuff, I have never had a better tasting weed drink and these guys can seriously get to ya if your [sic] not too careful. The drink has got a sweet onset and a great bud after taste. Like with many other edibles I would recommend you either add milk to the tea or drink it with a fatty meal. Otherwise you may not get the maximum effect of the thc content."[20]

- A March 27, 2013 guest post on cannabissearch.com states: "Check out Tea-pot Teas and the insta-high line by CWD meds. Tastes great and packs a punch. they [sic] have a variety of different flavors."[21]

- A picture of a package of "Honeybush Hemp Infusion" under the title "cannabis tea," as well as cans of "cannabis drinks" that appear to be part of an in-store display, from forum.sensiseeds.com. There is no indication where these goods are offered for sale.[22]

- A picture and discussion of a canned beverage called "C-ICE Swiss Cannabis Ice Tea" on rockingtherepublic.com. Participants in the discussion represent that the product was previously available in the United States and will be available again, although one post indicates that the product does not actually contain THC.[23]

We consider as a whole the following facts: the extremely descriptive nature of the term **THCTea**; that marijuana, although illegal under federal law, may be possessed legally under state law in some circumstances in more than 20 states and the District of Columbia; and that nothing in the application indicates that Applicant's goods will not be offered through medical marijuana dispensaries or locations where marijuana products are legally (under state law) sold at retail for adult recreational use, either of which may offer consumable goods containing THC. Based on these facts, we find that a reasonably prudent consumer would be likely to

---

[20] February 22, 2013 Office Action at 9.

[21] April 17, 2014 Denial of Request for Reconsideration at 27.

[22] September 12, 2013 Office Action at 30-33.

[23] *Id.* at 34-40.

believe that Applicant's **THCTea** tea-based beverages contain THC although they do not. *Cf. In re Compania de Licores Internacionales S.A.*, 102 USPQ2d 1841, 1848 (TTAB 2012) (collecting cases in which marks that include CUBA or HAVANA formatives have been held primarily geographically deceptively misdescriptive despite embargo on sale of Cuban goods in the United States); *In re Quady Winery Inc.*, 221 USPQ at 1213-14 (finding ESSENSIA deceptively misdescriptive for wines not containing essensia, a rare, commercially unavailable type of Hungarian Tokay wine). Furthermore, whether Applicant's products feature the intoxicant THC would be highly relevant to a consumer's purchasing decision. *See In re Shniberg*, 79 USPQ2d at 1311 (explaining that "the misdescription must concern a feature that would be relevant to a purchasing decision").[24] We therefore find Applicant's mark to be deceptively misdescriptive within the meaning of Section 2(e)(1).

   ***Decision***: The refusal to register Applicant's mark **THCTea** is affirmed.

---

[24] The relevancy requirement contrasts with the materiality required for deceptive marks. *In re Shniberg*, 79 USPQ2d at 1311; *see also* 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 11:55 (4th ed. September 2015) ("The key difference between 'deceptively misdescriptive' marks under § 2(e)(1) and 'deceptive' marks absolutely barred under § 2(a) is that a 'deceptive' mark is one in which the mis-description or falsity is 'material' in that it is likely to significantly induce a purchaser's decision to buy."). We reiterate that Applicant's mark is not refused registration under Section 2(a) of the Act.