**THIS OPINION IS A
PRECEDENT OF THE TTAB**

Mailed:
February 8, 2012

**UNITED STATES PATENT AND TRADEMARK OFFICE**

———

**Trademark Trial and Appeal Board**

———

Lebanon Seaboard Corporation

v.

R & R Turf Supply, Inc.

———

Opposition No. 91197241
to application Serial No. 77850120
filed on October 16, 2009

———

Holiday W. Banta of Woodard, Emhardt, Moriarty, McNett &
Henry LLP for Lebanon Seafood Corporation.

Matthew J. Schonauer and John J. Okuley of Mueller Smith &
Okuley LLC for R & R Turf Supply, Inc.

———

Before Seeherman, Bucher and Bergsman, Administrative
Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

Lebanon Seaboard Corporation has opposed, on the ground

of likelihood of confusion, the application of R & R Turf

Supply, Inc. to register TURFECTA, in standard characters,

as a trademark for "grass seed."[1]  In particular, opposer

---

[1]  Application Serial No. 77850120, filed October 16, 2009, based
on Section 1(b) of the Trademark Act (intent-to-use).

alleges that it is the owner of Registration No. 1492504 for

TRIFECTA for lawn seed; that it first used the mark in

commerce for lawn seed as early as September 1, 1987, and

has used the mark continuously prior to any date of first

use on which applicant may rely; that opposer's mark is

entitled to a broad scope of protection; that the parties'

marks are substantially similar and the goods are identical;

and that applicant's mark for its identified goods is likely

to cause confusion or mistake or to deceive.[2]

Applicant denied the salient allegations of the notice

of opposition.  It also included in its answer additional

paragraphs that we regard as explanations for its denials,

including that the suffix FECTA is a laudatory phrase in the

English language; that at least 56 third-party registrations

utilize a version of FECTA in their marks as an

incorporation of "perfect"; that "Trifecta" is an English

word that is used for a popular type of horse racing bet,

and is also used to describe a difficult achievement or a

grouping of three positive elements; that FECTA conveys a

---

[2]  In its brief, in response to applicant's argument that the FECTA element of the marks is descriptive and therefore should be given less weight, opposer stated that if this were true then applicant's mark is merely descriptive.  We regard this statement as opposer's attempt to point out that applicant's position is untenable in view of applicant's additional assertion that its TURFECTA mark "instantly conjures up images of turf, grass, or lawn as the associated good or service without further inquiry." Brief, p. 13.  However, to the extent that opposer meant its statement to be a serious claim, we agree with applicant that this ground was neither pleaded nor tried.

2

laudatory connotation; and that opposer markets its goods in the golf course market while applicant markets its goods to the suburban hobby farmer market.

By operation of the rules, the record includes the pleadings and the file of the opposed application.

Shortly before the close of discovery the parties stipulated that they would seek determination of the merits of this case through Accelerated Case Resolution Procedure (ACR). This is an alternative procedure to typical Board inter partes proceedings that involve full discovery, trial and briefing. By adopting an ACR option, the parties can obtain a determination in a shorter time period. See TBMP § 702.04 (3d ed. 2011).[3] One common approach to accelerating resolution of a case involves a stipulation by the parties to submit their trial evidence concurrently with their legal arguments, as in a case involving cross-motions for summary judgment, thereby obviating the need to schedule separate trial periods for the taking of testimony and submission of other evidence. See, e.g., Weatherford/Lamb, Inc. v. C & J Energy Services, Inc., 96 USPQ2d 1834 (TTAB 2010); Miller Brewing Co. v. Coy International Corp., 230 USPQ 675 (TTAB 1986); and TBMP § 528.05(a) (3d ed. 2011) and

---

[3] The Board also makes information on ACR options available through its web page, at the following internet address: http://www.uspto.gov/trademarks/process/appeal/index.jsp, and at TBMP § 702.04(a) as well as at TBMP § 528.05(a).

authorities cited therein.[4]  Another approach, which may be used in conjunction with or in lieu of the first, is to simplify proceedings through the use of fact stipulations and stipulations regarding the admissibility of certain evidence.  See, e.g., Target Brands, Inc. v. Shaun N.G. Hughes, 85 USPQ2d 1676 (TTAB 2007).  Under this latter approach, time and resources that would otherwise be allocated to proof of facts is saved and the parties' later briefs on the legal issues can be focused on the issues subject to actual dispute.

The parties in this case combined the aforementioned approaches, and stipulated to a schedule that did not include testimony periods, but resulted in the concurrent submission of briefs and supporting evidence.[5]  In addition, the parties stipulated to the following:

> Opposer has standing to bring this opposition;
>
> Opposer is the owner of trademark registration No. 1492504, issued June 14, 1988, for TRIFECTA for lawn seed, and the identification of goods in that registration contains no limitation as to channels of trade or purchasers;
>
> Priority of use is not at issue;

---

[4] At the time Miller Brewing was decided, the Board did not refer to such agreements to accelerate proceedings as "ACR."  That designation is of more recent adoption.

[5] The parties did not specify, in their stipulation, when testimony and other evidence would be filed with the Board, although they did specify when declarations or affidavits would be served between the parties.  However, because the stipulation provided no explicit deadlines for filing testimony and evidence, and the parties each made such filings concurrently with their briefs, we conclude that they agreed to such a concurrent filing arrangement.

Applicant filed on October 16, 2009 the subject application for the mark TURFECTA for grass seed; this application was based on an intent to use the mark in connection with grass seed; applicant has not filed a Statement of Use in its application; and the identification in the application contains no limitation as to channels of trade or purchasers;

Lawn seed and grass seed are legally identical descriptions of goods for the purposes of this opposition; and

The word "trifecta" has no special meaning in the grass seed products field.

The parties also made certain stipulations with respect to USPTO records involving marks with some version of the suffix –FECTA, and as to the accuracy of the customer lists produced by each party.

In addition, the parties stipulated that testimony could be submitted by affidavit or declaration, and to that end opposer submitted, concurrently with its main brief on the case, the declaration testimony, with exhibits, of Murray Wingate, the turfgrass sales and marketing manager of its Lebanon Turf Products division, and applicant submitted, concurrently with its main brief on the case, the declaration testimony of Richard C. Leslie, its president, and Richard Weigand, its vice president.

Opposer also made of record, by notice of reliance filed concurrently with its main brief on the case, certain web pages, various third-party registrations and registration files, applicant's answers to opposer's

interrogatories, applicant's answers to opposer's request for admissions, applicant's initial disclosures (not including any documents), and applicant's responses to opposer's requests for the production of documents. With respect to the latter, Trademark Rule 2.120(j)(3)(ii) provides that documents obtained through disclosure or under Rule 34 of the Federal Rules of Civil Procedure cannot be made of record by notice of reliance alone. However, the produced documents submitted by opposer under the notice of reliance were authenticated by applicant's responses to the requests for admission. See TBMP § 704.11 (3d ed. 2011).[6]

Applicant submitted, under notice of reliance filed concurrently with its main brief on the case, dictionary definitions of "trifecta"; copies of the electronic record for two cancelled trademark registrations; opposer's responses to applicant's interrogatories; opposer's responses to applicant's requests for admission; and opposer's initial disclosures and opposer's responses and supplemental responses to applicant's requests for production of documents. With respect to the latter, Trademark Rule 2.120(j)(3)(ii) provides that documents obtained through disclosure or under Rule 34 of the Federal Rules of Civil Procedure cannot be made of record by notice

---

[6] Alternatively, the parties could have stipulated to the admissibility of all documents produced in response to a request for production of documents.

of reliance alone.  However, applicant did not actually submit with its notice of reliance any documents, only opposer's responses which consist generally of objections and/or a representation that documents would be produced. We have treated these responses as of record.  See Calypso Technology, Inc. v. Calypso Capital Management, LP, 100 USPQ2d 1213 (TTAB 2011).[7]  Applicant also submitted, pursuant to stipulation, a copy of search results obtained through the USPTO's TESS (Trademark Electronic Search System) database.[8]

Opposer has objected to paragraphs 12 through 14 of Mr. Weigand's declaration, which states that Mr. Weigand spoke with opposer's employee (and witness) Murray Wingate in late 2010 (paragraph 12), and gives both information about that conversation (paragraph 13) and Mr. Weigand's reaction to opposer's pursuit of the opposition (paragraph 14).  The initial objection to this testimony was served by opposer on applicant prior to applicant's submission of its brief and testimony, in apparent accordance with the stipulation of

---

[7]  To the extent that the declaration of opposer's witness includes as exhibits documents that were produced by opposer in response to applicant's document production requests, these documents are of record and may be relied upon by either party.

[8]  Applicant also asserted, in submitting this document, that it is admissible pursuant to Trademark Rule 2.122(e) as an official record.  To clarify, electronic versions of trademark registrations and applications, and trademark application and registration files, are official records.  However, a summary of search results consisting, for example, of a listing of marks, serial or registration numbers, and status, is not an official record of the Office.  Calypso Technology, 100 USPQ2d at 1219.

the parties. The objection was then submitted to the Board by opposer concurrently with its reply brief. We do not have any response by applicant. We do not treat the objection as being unseasonably raised, however, because of the curious manner in which the parties chose to exchange service copies of their testimony and objections thereto. In their joint ACR stipulation the parties agreed that they could offer testimony into evidence by declaration or affidavit; that the declarations or affidavits would be served on the adverse party no less than 21 days prior to the due date of the adverse party's brief; and that the parties could object to the admissibility of evidence offered by declaration or affidavit within 14 days from the service of the declaration or affidavit. Based on the statements made by opposer's counsel in the declaration accompanying the objection, it appears that instead of simply submitting Mr. Weigand's testimony declaration into the record, applicant provided opposer with a draft of the testimony, to which opposer made certain objections. This testimony was provided more than the 21 days prior to the due date for applicant's brief, and opposer informed applicant of its objections by a letter (e.g., "We would appreciate it if you would please remove paragraphs 13 and 14 from the Weigand Declaration"). We have no information about whether applicant responded to opposer's

8

requests/concerns when they were first served on applicant.
As noted earlier, applicant filed its testimony at the same
time it filed its trial brief.[9] Thus, we have a situation
in which opposer raised its objections with applicant within
the time set forth in the stipulation, but the formal
objection was filed with the Board at a point where
applicant may have believed that it could not respond.[10]

Turning to the merits of the objections, opposer has
objected to paragraphs 12-14 of the Weigand declaration.
However, the letter with opposer's objections (exhibit TT)
makes no objection to paragraph 12, and therefore any
objection to this paragraph was not seasonably raised and is

---

[9]  It appears that the parties agreed, in essence, that applicant
would serve the testimony it planned to file with its brief prior
to the due date for opposer's brief, so that opposer could object
to it, if necessary, and then file a brief that could address
both opposer's own evidence and that of applicant.  Likewise, the
parties' agreed procedure would allow applicant to receive
opposer's testimony prior to the due date for applicant's brief,
so that applicant could object, if necessary, and then file a
brief that could address both applicant's own evidence and that
of opposer.  The parties' stipulation presumably would also have
covered any rebuttal evidence to be offered by opposer, but since
none was offered, the effect of the stipulation on rebuttal
evidence is a moot point.  We engage in conjecture in regard to
the intentions behind the parties' stipulation to proceed by ACR
because they did not contact the Board attorney assigned to the
case either before crafting the ACR agreement or when submitting
it for approval by the Board.  The better practice when parties
agree to proceed by ACR is to discuss the proposed process with a
Board attorney, either to help frame the agreement, or to modify
or amend an agreement, as may be necessary to promote clarity,
once it has been entered into and filed with the Board.
[10]  Normally the Board will not entertain papers filed after the
filing of a reply brief.  In view of the unusual situation
presented here, if applicant had filed a response to the
objections made in the reply brief, the Board would have
considered it.

overruled.  As for paragraphs 13 and 14, they appear to refer to settlement discussion, and therefore are not admissible under Federal Rule of Evidence 408, which prohibits the use of such negotiations to prove or disprove a disputed claim.  This objection is sustained.  We add that, whether or not this testimony is considered it does not affect our decision herein.

The proceeding has been fully briefed.[11]

We think it worthwhile to make some additional comments about the utilization of the ACR procedure.  The parties have stipulated to certain things, including certain facts and issues.  This is admirable, as it means that no finding must be made about them.  This would normally save the Board time, and save the parties effort, as they would not have to submit evidence to prove these points.  However, despite these stipulations, the parties have submitted evidence on these points, including, for example, testimony, material and admissions that lawn seed and grass seed are the same. By doing so, the parties have gone to needless effort and expense, and the Board must also unnecessarily review this evidence.

---

[11]  It is noted that neither party included parallel cites to The United States Patents Quarterly (USPQ) in their citation of authorities.  When cases are cited in a brief, the case citation should include a citation to the USPQ if the case has appeared in that reporter.  TBMP §§ 101.03 and 801.03 (3d ed. 2011).

Second, the parties have stipulated that the Board "resolve any disputed issues of material fact in making a final determination on the merits." This same point was made in their briefs. A provision that the Board may resolve any disputed issues of material fact normally applies when the parties wish the Board to make a final determination on a summary judgment motion. Normally a motion for summary judgment must be denied if there are any genuine disputes as to material facts. However, parties may authorize the Board to resolve such disputes and issue a final determination, essentially agreeing that the Board may determine the case based on the evidence submitted in connection with the summary judgment motion, and that it is not necessary to have a trial in which additional evidence is submitted. See TBMP § 528.05)(a)(2) (3d ed. 2011). In the instant case, the parties did go to trial and, therefore, as in any proceeding involving a trial, whether or not it follows an ACR procedure, the Board resolves any factual disputes. Although including the stipulation in their agreement that the Board resolve any disputed issues of material fact was not necessary in view of the fact that the parties went to trial, the Board does not discourage the inclusion of such a provision in an ACR agreement, as it makes clear that it is the parties' intention that the Board

11

should issue a final decision based on the evidence of record.

This brings us to the merits of this proceeding.

First, as noted, the parties have stipulated that opposer has standing (Stipulation 8), and that priority of use is not at issue (Stipulation 18).

The issue, then, that we must resolve is that of likelihood of confusion. Our determination of this issue is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). See also, In re Majestic Distilling Co., Inc., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003).

The parties have stipulated that their goods are legally identical: lawn seed (the goods identified in opposer's registration) and grass seed (the goods identified in applicant's application) are legally identical descriptions (Stipulation 19). Accordingly, this du Pont factor weighs in favor of finding a likelihood of confusion.

Because the goods are legally identical, they must be presumed to travel in the same channels of trade. In fact, the parties have stipulated that their respective identifications contain no limitations as to channels of trade or purchasers (Stipulations 10, 11, 14, 15). Thus,

the du Pont factor of the channels of trade weighs in favor of finding a likelihood of confusion.

The parties have not provided any arguments or pointed to any evidence on the factor of "the conditions under which and buyers to whom sales are made, i.e., 'impulse' vs. careful, sophisticated purchasing." In fact, opposer says only that because the goods are identical, "the conditions of sale and sophistication of consumers must be identical," brief, p. 26, without any discussion of what the conditions of sale or the sophistication of purchasers are. Applicant has not addressed this du Pont factor at all. Because neither party has shown how this du Pont factor would favor it, and because the evidence regarding the facts and circumstances surrounding the degree of consumer care was not fully developed, we treat this factor as neutral.

The next du Pont factor we consider is the strength of opposer's mark. The dictionary definitions of record show that "trifecta" is an English word meaning:

1.　　a variation of the perfecta in which a bettor wins by selecting the first three finishers of a race in the correct order of finish
2.　　TRIPLE <achieved a show-business ~: a platinum record, hit TV series, and an Oscar>.[12]

The parties have stipulated that the word "trifecta" has no special meaning in the grass seed products field.

---

[12]　Merriam Webster's Collegiate Dictionary, 11th ed. (2003).

13

Stipulation 25. Based on this stipulation and the dictionary definitions, we find that opposer's mark is arbitrary. Opposer's predecessor began using the mark TRIFECTA for lawn seed as early as September 1, 1987 (Wingate ¶ 10). Opposer has advertised the mark on the Internet, through its network of sales agents, and at national and regional trade shows (Wingate ¶ 24), and its distributor and dealers also advertise the mark on the Internet, in their businesses, in printed catalogs, in point of sale materials such as posters and shelf talkers, in advertising flyers and at regional trade shows (Wingate ¶ 25). Although much of the information about opposer's sales and advertising expenditures has been filed under seal, the declaration that opposer filed for the public record states that from 1997 through 2011 opposer spent over $250,000 on packaging and print advertising, and from 2006 through 2010 opposer sold over $8 million worth of TRIFECTA product, representing over 8 million pounds of seed. (Wingate ¶¶ 30, 32).

We cannot conclude, based on the foregoing, that opposer's mark is famous. We have no context for opposer's advertising and sales figures, such as how the figures for the TRIFECTA lawn seed compare with that for other brands of grass seed. See Bose Corp. v. QSC Audio Prods., 293 F.3d 1367, 63 USPQ2d 1303, 1309 (Fed. Cir. 2002). Opposer's

advertising figures, on their face, do not appear to be overwhelmingly large. In particular, opposer's "advertising" expenditures amount to approximately $17,800 per year, and include costs for packaging as well as for actual advertising. Nor is there any other objective evidence of the recognition of the mark. For example, we have no evidence of press coverage, brand awareness studies, or the like. Cf. Citigroup Inc. v. Capital City Bank Group Inc., 637 F.3d 1344, 98 USPQ2d 1253, 1260 (Fed. Cir. 2011). Nor is there any specific information about the extent of opposer's advertising, only general statements such as opposer advertises the TRIFECTA brand "on the internet, through its network of sales agents, and at national and regional trade shows." (Wingate ¶ 24). Given the great deference to which a famous mark is entitled in terms of the dominant role fame plays in the likelihood of confusion analysis, it is the duty of a party asserting that its mark is famous to clearly prove it. Coach Services Inc. v. Triumph Learning LLC, 96 USPQ2d 1600, 1606 (TTAB 2010); Leading Jewelers Guild Inc. v. LJOW Holdings LLC, 82 USPQ2d 1901, 1904 (TTAB 2007).

On the other hand, there is no evidence of *any* use of similar marks on similar goods. Although applicant argues that "the phrase FECTA is so commonly used that the public will look to other elements to distinguish the source of the

services [sic]," brief p. 11, applicant relies only on third-party registrations, and such registrations are not proof of use of the marks shown therein. See In re Albert Trostel & Sons Co., 29 USPQ2d 1783, 1785 (TTAB 1993) ("third-party registrations are not evidence that the marks shown therein are in commercial use, or that the public is familiar with them"). Nor do the third-party registrations show that opposer's mark is weak. Other than opposer's registration, there is only one registration (No. 2961154) for the mark TRIFECTA in Class 31 (the class for grass seed), and that is for horse feed (Wingate ¶ 50); in fact, opposer's mark TRIFECTA is the only mark containing the letter string "FECTA" registered for grass seed (Wingate ¶ 31, ex. L).[13]

We find that opposer's mark TRIFECTA, an arbitrary mark used for a 25-year period, is a strong mark, and the registration is entitled to a broad scope of protection. Further, the du Pont factor of "the number and nature of similar marks in use on similar goods" weighs in favor of a finding a likelihood of confusion.

---

[13] There was a registration, now expired, for PERFECTA for grass seed (No. 1562450) that coexisted until 2009 with opposer's registration. We can draw no conclusion from that coexistence about the likelihood of confusion between opposer's mark and applicant's mark, which is different from PERFECTA. Further, an expired registration does not affect the strength of opposer's mark. Cf. Action Temporary Servs. Inc. v. Labor Force Inc., 870 F.2d 1563, 10 USPQ2d 1307, 1309 (Fed. Cir. 1989) ("[A] cancelled registration does not provide constructive notice of anything.").

This brings us to a consideration of the marks, keeping in mind that when marks would appear on virtually identical goods or services, as they do here, the degree of similarity necessary to support a conclusion of likely confusion declines. Century 21 Real Estate Corp. v. Century Life of America, 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992).

Opposer's mark is TRIFECTA and applicant's mark is TURFECTA. They are clearly similar in appearance, in that they have a similar structure and length, beginning with the letter "T" and ending with the identical element "FECTA," and one of the two remaining letters in each mark is an "R." These same elements result in similar, although not identical, pronunciations.

However, applicant would have us discount the similarities caused by the FECTA portion of both marks, contending that this element should be given less weight because it is "a common laudatory suffix." Brief, p. 8. Applicant bases this argument on approximately 56 third-party registrations that it asserts "utilize some version of the FECTA suffix as an incorporation of the word 'perfect' into the trademark," stating that "the suffix FECTA is used to import the Spanish connotation derived from the term perfecta (English for perfect) … . Brief, p. 10.

17

Third-party registrations are probative to the extent that they may show the meaning of a mark or a portion of a mark in the same way that dictionaries are employed. Leading Jewelers Guild, 82 USPQ2d at 1905.  However, we do not agree with applicant's position that the letter string FECTA in opposer's and applicant's marks would have this connotation, and therefore that it is entitled to less weight in the comparison of the marks.

With respect to opposer's mark, given the definitions of "trifecta" that applicant has made of record, we cannot conclude that consumers would view the FECTA portion of opposer's mark TRIFECTA separately from the mark as a whole; rather, they would ascribe to the mark the dictionary meaning of the word.  In fact, applicant itself appears to take this position elsewhere in its brief, noting that opposer's packaging uses graphics that relate to horse racing and thereby reinforcing the horse race betting meaning of the mark.  Further, even if consumers were aware that a trifecta is a variation of a perfecta, they would not regard FECTA in opposer's mark as referencing the laudatory term "perfect," but would understand it to refer to a type of bet.

As for applicant's mark, we are not persuaded by the third-party registrations that consumers viewing applicant's mark would understand the FECTA portion to mean perfect.

Many of the registrations are for the mark PERFECTA *per se*, or PERFECTA with an additional word. Although this term may suggest or mean "perfect," it does not follow from these registrations that a portion of the registered marks, FECTA, also has the connotation of "perfect," or that when consumers see FECTA combined with other letters that the letter string would have this meaning. The bulk of the remaining registrations are for TRIFECTA, either alone or combined with other words, such as TRIFECTA MANAGEMENT GROUP.[14] Again, because this word has a recognized meaning, consumers are not likely to break this word down into its separate syllables and ascribe separate meanings to each. As for the few remaining marks, it does not appear that consumers would view the letter string FECTA in them as having a meaning separate from the marks as a whole, or conveying a laudatory connotation. See, for example, INFECTA GUARD for medicated coating for animal ear tags (Reg. No. 1828749), in which FECTA would be considered part of INFECTA and a reference to "infection"; EFFECTA for shaped sections of metal (Reg. No. 2989821); PERFECTALIGN for dental instruments (Reg. No. 3706848), in which FECTA would not be viewed as an element at all, since the mark would be read as "Perfect Align." Certainly the limited

---

[14] These third-party registrations for TRIFECTA marks are for goods and services very different from lawn seed, and have no effect on the strength of opposer's mark.

19

number of such registrations is not a sufficient basis for us to conclude that FECTA, when used in opposer's mark or in applicant's mark, conveys a separate laudatory meaning of "perfect."

Accordingly, it is appropriate to consider the parties' marks as a whole, and not give less weight to the FECTA portion.

We have already said that the marks are similar in appearance and pronunciation. As for their meaning, opposer's mark has a clear dictionary definition relating to horse race betting. Applicant's mark is not an actual word, although consumers would recognize, particularly in view of the goods with which it is used, that it begins with the word "turf," which is defined, inter alia, as "a surface layer of earth containing a dense growth of grass and its matted roots; sod."[15] This difference in meaning, however, is not sufficient to distinguish the marks. Because of the similarity in structure of TURFECTA to "trifecta," consumers are likely to see TURFECTA as a play on "trifecta," with the descriptive or generic word "turf" replacing the element "tri."[16] This connotation is subtly reinforced by the horse

---

[15] The American Heritage Dictionary of the English Language, 4th ed. (2006). The Board may take judicial notice of dictionary definitions. University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co., Inc., 213 USPQ 594 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).
[16] "Turf seed" is a generic term for seed, according to applicant's witness, Richard Leslie, who states that applicant

20

racing meaning of "turf": "a. A racetrack, b. The sport or business of racing horses."[17] As a result, the marks TRIFECTA and TURFECTA convey a similar commercial impression, and TURFECTA may be seen as a variation of opposer's mark TRIFECTA, indicating origin in opposer.

Accordingly, the similarities in appearance, pronunciation and commercial impression of the marks outweigh any differences in meaning. The <u>du Pont</u> factor of the similarity of the marks weighs in favor of finding a likelihood of confusion.

We turn next to two related <u>du Pont</u> factors, the nature and extent of any actual confusion, and the length of time during and conditions under which there has been concurrent use without evidence of actual confusion. There is no evidence of any instances of actual confusion. However, we do not consider this factor to favor applicant, because the period of concurrent use is quite limited. Applicant did not begin using its mark until February 26, 2010,[18] and applicant submitted its testimony on October 19, 2011, so there has been a period of only eighteen months of

---

"sells a wide variety of seed types, such as forage and turf seed … ." ¶ 6. "Turf seed" is known alternatively in the industry as "lawn seed," "grass seed" and "lawn grass seed." (Wingate ¶¶ 7, 10).
[17] <u>The American Heritage Dictionary of the English Language</u>, 4th ed. (2006).
[18] Although the application is based on intent-to-use, the Leslie declaration states that applicant has used its mark since February 26, 2010. ¶ 18.

contemporaneous use during which any confusion could have arisen. And applicant's sales and advertising during this period appear to be relatively limited as well. Applicant has redacted these figures from its brief, so we will not report them here.[19] But applicant concedes that its sales are modest in comparison to opposer's, and the figure it provided for advertising combines its costs for product packaging and marketing, which would include start up costs for designing and printing its packaging. As of February 15, 2011, applicant's marketing or advertising was limited to a website, starting in February 2010, and wholesale rural and suburban feed and seed store dealer promotional literature, starting in November 2010. Response to Interrogatory 4. Applicant had not used the mark in radio or television advertising as of February 15, 2011. Id. In view of applicant's relatively limited sales and advertising, and the short period of contemporaneous use, we do not view the absence of evidence of actual confusion as significant. Further, it is not clear that there has been an opportunity for confusion to occur in view of the conditions under which the parties currently operate. Applicant has pointed out that there is no overlap in the parties' actual customers. Brief. p. 17, opposer's customer

list (Opposer's exhibit D), applicant's customer list (opposer's exhibit BBB). Further, in response to opposer's request for admission, applicant stated that the parties market "their respective branded different products through different marketing channels to different customers for use by different end users." No. 6. We also recognize that evidence of actual confusion is difficult to obtain. Accordingly, the fact that there is no evidence of actual confusion does not show that confusion is not likely to occur. We treat both of these du Pont factors as neutral.

Applicant also asserts, as another probative fact, that in choosing the mark TURFECTA applicant made no attempt to mimic, copy, play off or trade on the fame of the TRIFECTA mark. Although evidence of an intent to confuse or deceive may lead to the conclusion that a defendant's efforts were successful, the converse is not true. Good faith adoption of a mark will not prevent a finding of likelihood of confusion. Mag Instrument Inc. v. Brinkmann Corp., 96 USPQ2d 1701, 1713 (TTAB 2010) ("evidence on applicant's behalf that it is seeking to register the mark in good faith does very little to obviate a finding of a likelihood of confusion because it is expected that applicants are acting in good faith. Accordingly, the issue involving

---

[19] We point out, though, that the testimony of applicant's witness Richard Leslie, which contains applicant's sales and marketing figures, was not filed under seal.

[applicant's] intentions in filing the subject application is not a significant factor in our likelihood of confusion analysis"), aff'd mem., No. 2011-1052, 2011 WL 5400095 (Fed. Cir. Nov. 9, 2011).

As for the remaining du Pont factors, to the extent that any apply we have treated them as neutral. We have also considered all of the parties' arguments, including the ones not specifically addressed herein.

As already discussed, the relevant du Pont factors in this case are either neutral or favor a finding of likelihood of confusion. In particular, the goods are identical and are sold in the same channels of trade to members of the general public. Although applicant relies heavily on the differences in the marks (and the lack of evidence of actual confusion) to offset these factors, given that a lesser degree of similarity is required when goods are identical, we find that the marks are sufficiently similar in these circumstances. Therefore, we find that opposer has met its burden in proving that applicant's mark TURFECTA for grass seed is likely to cause confusion with opposer's mark TRIFECTA for legally identical goods, lawn seed.

Decision: The opposition is sustained.